JOHN COLLINSON *vs.* THOMAS OWENS, *et al.*—*December,* 1833.

Where an executor or administrator pays to creditors a greater amount of assets than he has received, and the personal estate of the deceased is insufficient to pay his debts, he may be substituted in equity to the rights of the creditors so overpaid, and may proceed against the real assets of the deceased, upon the same terms, conditions and proof, and subject to the same defences, as the creditors themselves if unpaid might have proceeded upon and been bound by.

An admission of a debt by an executor, even a judgment against him, is no evidence against the heir to take the case out of the act of limitations.

The heir has the same uncontrolled discretion in resisting the payment of claims advanced against the realty, that the executor or administrator has in regard to the personalty.

Estoppels are not favored in equity.

A decree to sell real estate, and distribute the proceeds among the heirs of a deceased person, is no bar to a claim of a creditor of the deceased, seeking to enforce payment of his claim out of the real assets or their proceeds. The rights of the creditor were not in issue, considered or decided, by the decree for sale and distribution.

The mere loan of money to a deceased party in his life-time, for the purpose of purchasing land with, does not of itself create a lien on the land for its repayment; and consequently cannot be relied upon as evidence to rebut the plea of limitations insisted upon by the heir of the debtor, in defending his real estate from a claim of the lender.

APPEAL from the Court of Chancery.

The original bill in this case was filed by the appellant on the 22d of August, 1828, and was afterwards amended by making additional parties.

It alleged that *Edward Collinson*, the brother of the complainant, died intestate, and without issue, some time in March, 1823, leaving the complainant, and the appellees and others, his heirs at law. That letters of administration on his personal estate were committed to the complainant, who overpaid the personal estate the sum of $3,958 91, as appears by an account passed by the Orphans Court in February, 1825. That besides this overpayment, there were due the complainant himself, from his intestate, various other sums of money, some of which it was alleged constituted liens on his real estate, which before then had been sold (upon the application of the complainant and others,) by a decree of the court, dated August 18th, 1824, for distribution among his heirs, and that a portion of the proceeds thereof, due the appellees, remained then in the court of chancery. That the other heirs at law had contributed, out of their proportions of the proceeds of said real estate, the proportions due from them respectively on account thereof to the complainant; and the object of the bill was to apply the fund now in court belonging to the appellee, *Thomas Owens*, in the same way; upon the ground as regarded the debts that had been paid, that the complainant had a right to be substituted for such of the creditors of the intestate, as he had paid more than their proportions of the personal estate.

Vouchers and proofs of the various claims asserted by the complainant were exhibited, and among others, claims numbered 19 and 20, the former founded on a sealed con-

tract in relation to the division of certain real estate, dated in March, 1823; the latter being an open account for cash lent in January, 1813, which it was alleged and proved, was laid out in the purchase of the real estate, the proceeds of which it was the object of the bill to affect, and for that reason was supposed to constitute a lien thereon.

The answer of *Thomas Owens* relied upon the decree for the sale of the real estate of *Edward Collinson*, for distribution among his heirs, as a bar to the relief asked for by the present bill. It also charged, that the accounts passed by the complainant with the Orphans Court were false, and fraudulent in many particulars, and he relied on the act of limitations, and the staleness of the demands, and no every other circumstance that could constitute a defence to the present bill. The answers of the other defendants are not considered material.

*Bland*, Chancellor, on the 10th of October, 1832, dismissed the bill with costs. And the case was thereupon brought by the complainant to this court.

It was argued before BUCHANAN, Ch. J., and MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*Brewer*, for the appellant, contended,

1. That the accounts passed in the Orphans Court are *prima facie* evidence, that the personal estate has been exhausted in the payment of debts, so as to enable the complainant to come upon the real assets, for the payment of such part of his claims as the personal estate is insufficient to pay, provided he establish those claims by evidence other than the accounts, and that they are established by other evidence. *Gist's Admr's vs. Cockey and Fendall*, 7 *Harr. and Johns.* 139.

2. That the decree of 18th August, 1824, for the sale of *Edward Collinson's* real estate, and the subsequent proceedings constitutes no bar to relief in this suit. The

points of controversy in this case were not involved in the former cause. They were not, and could not have been put in issue then, and consequently the decree cannot be a bar to the relief now sought. 2 *Mad. Ch. Pr.* 241, 249. 1 *Stark. Ev.* 198, 202, 207. In the former case, the complainant appeared as heir at law, he now appears as a creditor.

3. The statute of limitations constitutes no bar to the claims of the complainant, and more especially those numbered 19 and 20. *Sugden's Vend.* 549, 550. *Ghiselen and Worthington vs. Fergusson,* 4 *Harr. and Johns.* 524.

4. That the personal estate for the purposes of this suit should be appropriated first, to the discharge of the claims of others, actually paid by the administrator, and then to the discharge of his own claims. When one creditor has a lien and another has not, the creditor not having a lien, can compel him who has, to resort to his lien, in order that the general creditor may be paid out of the other assets of the debtor. *Field vs. Holland,* 6 *Cranch.* 8. *Ib.* 27.

5. That so much of the personal estate as is appropriated to the discharge of the complainant's claims, should under the circumstances of this case, be first applied to the discharge of such of them, (if there be any) as would be barred in this suit by the statute of limitations.

6. That if the decree of 18th August, 1824, is not a bar, the complainant is, in any event, entitled to a portion of his claim No. 19, and consequently, the decree of the chancellor dismissing the bill must be erroneous.

*Alexander* for the appellees.

1. The decree in the former case, is a bar to the relief prayed here. No relief can be had in this case inconsistent with the decree, and proceedings in that case. There is no allegation in the present bill, that the complainant did not know the condition of the estate at the time the first bill was filed. The relief prayed in the two cases is inconsistent. The first bill was for a partition of the land, and

another partition could not now be decreed, and if so, how can another partition of the money, the representative of the land, be decreed.  *Milf.* 195.  *Tourton vs. Flower,* 3 *Pr. Wms.* 371.  A decree or judgment in *rem* is conclusive, not only as to the points decided, but as to the right of the thing itself, and the same subject cannot afterwards be litigated.  *Charlotte Hall School vs. Greenwell,* 4 *Gill and Johns.* 407.  *Ib.* 414.  *Geffard vs. Hart,* 1 *Sch. and Lef.* 408.  3 *Atk.* 326.  *Ib.* 809.  2 *Atk.* 348.

2. If, however, the decree is not a bar, still the complainant is not entitled to relief upon his present bill.  The personal estate in the hands of the administrator, is to be applied rateably to all the claims, including those due the administrator himself, and he has no right to say which of his claims shall be paid out of the personal estate.  1798, *ch.* 101, *sub-ch.* 8, *sec.* 17, 19.  If the administrator is at liberty to pay fully out of the personal estate, claims that could not be established, as against the realty, so as to leave wholly unpaid those which are a charge on the realty, great injustice might be done the heir.  It would be giving the administrator the administration of both real and personal estate.  The rule applicable to the case of two creditors, the one having two funds, and the other but one, does not apply here, because here all the creditors have the same right to resort to both funds.  They are accessible alike to all.

3. The plea of limitations is a bar to each and all of the claims.  For the advance of money in 1813, it is very clear, the personal responsibility of *Edward* alone was relied on, and that a landed security was not at the time thought of.

DORSEY, J., delivered the opinion of the court.

The important question presented for our determination in this case, is, whether an administrator, on an estate inadequate to the payment of the debts of the deceased, after having paid all such debts, is, in a court of equity, entitled to a reimbursement of the amount by him overpaid, out of

the deceased's real estate upon the production of his accounts passed with the Orphans Court, and the vouchers upon which they are founded, and establishing by legal testimony independently of the action of the Orphans Court upon the subject, an amount of such vouchers or debts, equal to the sum overpaid the personal estate? Or in other words, can an administrator, thus circumstanced, seek reimbursement from the real assets, upon any other principle than that of being subrogated to the rights of *all* the creditors by him paid off?

The attempt now made, if sustained, is in effect to give to the administrator the power to administer the real as well as personal assets. It strips the heir of his inherent hereditary rights, and vests them in the administrator. Such a doctrine is at war with the spirit of all the decisions of this court upon analagous subjects. We have determined that the admission of a debt by an executor or administrator, even a judgment against him, is no evidence against the heir, to take a claim out of the statute of limitations—wherefore then, shall the unauthorized acts of the administrator be permitted to have that effect? His duty is prescribed by our testamentary system; he is to distribute the personal effects of the deceased rateably amongst his creditors. If disregarding his liabilities, he has satisfied debts which he was under no obligation to pay; the consequences of his acts should be visited on himself, not on the appellees: their legal right should not be impaired thereby. All that in equity and conscience he could ask, is, that he should be substituted to the rights of the creditors overpaid. With this he is not satisfied; but calls on a court of equity, by an evasion of the mandates of the testamentary system, an indirect kind of transmutation of payments, to invest him with rights not possessed by those with whose attributes he is clothed, to grant to him a substitution against the realty not merely to the amount of his over payment to any individual creditor, but to the whole amount paid such creditor; although more than two-thirds of such payments were made

with the personal assets. The object and effect of which would be to deny to the heir the privilege of defending his inheritance against illegal and unjust claims against it; and to vest that authority in the executor or administrator. Such a proceeding cannot be tolerated. The heir has the same uncontrolled discretion in resisting the payment of claims advanced against the realty, that the executor or administrator has in regard to the personalty; and by no act, device or contrivance of the administrator or executor, can his power to do so, be abridged. Sanction the principle now insisted on, and all claims passed by the Orphans Court and paid by the administrator, though barred by the statute of limitations, or liable to be defeated upon their merits, by proof within the knowledge and reach of the heir, provided there be claims of an equal amount against which the heir can offer no defence, may be fixed by the executor or administrator upon the real estate, without leaving to the heir any possibility of defending himself against them. For example: if the realty be worth $10,000, the personalty $10,000, and the debts defeasible as aforesaid amount to $10,000, and the debts indefeasible to the like sum, by the management of the executor or administrator in applying the entire personal assets in payment of the defeasible debts, the whole of the real estate is consumed by the indefeasible debts, and the heir is left pennyless; whereas, had the personalty been appropriated as the law directs, one half of the realty would have been preserved to the heir.

The only correct disposition that could be made of the personal assets, is to apply them to the payment of all the debts of the deceased in due proportions. As respects the balances due such creditors, which have been paid by the administrator, he must establish and proceed to recover them out of the realty, by the same course of proceedings that such creditors, if unpaid, would have been bound to resort to.

We cannot regard the decree for the sale and distribution of the real estate of *Edward Collinson,* relied on in the answer as a bar to the relief sought by the complainant, as furnishing the slightest obstacle to his recovery. Estoppels

are not favored, but are odious in the eye of a court of equity. None of the rights or matters in controversy in this cause, were at issue, considered, or decided by the chancellor, in the case referred to. The only question there adjudicated, other than the sale of *Edward Collinson's* real estate, was the distributive proportion, as respected each other, to which his several heirs were respectively entitled. Whether the personal estate was insolvent, or to what amount the real estate was answerable to creditors, were questions not presented by the record, nor examined by the chancellor.

The only use that could be made of the proceedings in that case, against the complainant here, would be, that they were evidence of the injustice and fraudulent fabrication of his claims, as from their amount, he must have known of the insolvency of the personal estate; and would consequently, have proceeded for a sale of the real estate, to pay the debts of the deceased, rather than for its distribution amongst his heirs. But for this purpose they cannot avail the appellees; as from the record in this case it does not satisfactorily appear, that at the time of said proceedings and decree for the sale of the real estate, the insolvency of the personal fund was apparent to the appellant.

Claim No. 20 is not relieved from the bar to its recovery, which the plea of limitations presents by the proof offered as to its being a loan from *John* to *Edward Collinson* for the purpose of purchasing land, and therefore, as is insisted, a lien thereon. There is nothing in the transaction from which such an equity could arise. *John Collinson* does not appear to have looked to the land, as a security for his debt, either at the time of the loan or at any subsequent period. When the money was advanced, the agreement was that *Edward* should give his note for the amount. The only security demanded, or to have been given, was the personal responsibility of *Edward*. That such was subsequently the understanding of the brothers, is manifest from the settlement between them in 1823, where this loan was simply made an item in an open account; and where *John*

agrees, that *Edward* should have the land on which the alleged lien is alleged to be, at so much per acre ; to be paid for in a manner distinctly stipulated, yet not an intimation is given of the lien in question. Such an omission cannot be accounted for, had the lien existed in the contemplation of the parties.

Although we cannot grant relief to the complainant to the extent of his pretensions, we cannot sustain the decree of the Chancery Court dismissing his bill. He unquestionably was entitled to some relief. Claim No. 19 relative to the division of the land, being in our opinion sufficiently supported by proof, the balance due thereon, after the moiety of *Rezin Estep's* bond, and its distributive proportion of the personal estate are deducted therefrom, stands unaffected by the plea of limitations, and should be paid out of the proceeds of the real estate of *Edward Collinson ;* and one fifth part thereof must be drawn from the share received or to be received by *Thomas Owings.*

As soon as the necessary audit is made, this court will pass a decree reversing the decree of the Chancery Court, and giving to the appellant that relief to which, from our views expressed in the aforegoing opinion, he appears to be entitled.

DECREE REVERSED.