GEORGE W. SPENCER AND OTHERS
vs.
WILLIAM A. SPENCER AND JOHN
SPENCER, EXECUTORS OF
ISAAC SPENCER AND OTHERS.

September Term, 1847.

[CONSTRUCTION OF WILL—LIMITATIONS.]

A TESTATOR devised all his estate, real, personal and mixed, to his brother in fee, "on these terms and conditions," viz. "after all my debts are paid, he is to call in two discreet persons to make an estimate of the real value of all my estate," and then adding to his own children two sons of the testator's deceased brother, and a son of his niece, he is to ascertain "what my estate will divide into," and pay to each of the three last named parties on their arrival at twenty-one "a sum that will put them each on a footing with his own children." HELD—

1st. That the estimate of his property is not to be made irrespective of the debts of the testator, but exclusive of them, and by accepting this devise, the testator's brother did not become personally bound to pay the legacies above directed whether the estate was sufficient to pay its debts or not.

2d. The acceptance of this devise by the testator's brother, did not operate as an extinguishment of a debt due by the testator to him, and the legatees have no right to plead the statute of limitations against his claim, either as to the real or personal estate, he alone having the right to interpose this plea to claims against the testator.

As a general rule, where lands are devised charged with the payment of a legacy, and the devisee accepts the devise, he becomes personally liable for the legacy, and must pay it whether the property devised be of less or greater value.

Where an executor is himself the creditor of the estate, limitations will not bar his claim, for he cannot institute suit against himself for the recovery of the debt.

By our testamentary system, the executor or administrator alone can plead limitations to claims against the personal estate of the deceased.

A trust in a will to pay debts, against which the statute of limitations has run at the death of the testator, will not revive them ; but the trustee alone has the authority to plead it.

[The facts of this case are fully stated in the opinion of the Chancellor.]

THE CHANCELLOR:

On the 10th of December, 1834, the complainants filed their bill in this court, praying for relief against the representatives and devisees of Isaac Spencer, deceased.

It appears by the proceedings that William Spencer, of Kent county, departed this life in the month of March, 1822, having on the 3d of the same month duly made and published his will, containing the following provisions.

"I give and bequeath to my brother, Isaac Spencer, and his heirs and assigns forever, all my estate, real, personal and mixed, on these terms and conditions.

"After all my debts are paid, he is to call in two discreet persons (and he may consult the Orphans Court, if he may see proper, as to the persons) to make an estimate of the real value of all my estate, real and personal, and then adding to the number of his own children then living the two sons of my lamented brother, Jervis Spencer, George and William Spencer, and William Knight, son of my beloved niece, Charlotte Ringgold Knight, he is to ascertain what my estate will divide into, taking into consideration his own children then living, and the three above named, if alive, or so many as may be alive, and he is to pay to each of my brother's children, and to William Knight, a sum that will put them each on a footing with his own children on the arrival of the said George Spencer, William Spencer and William Knight at the age of twenty-one years, without interest, taking into consideration the full value of all my estate, real and personal, and in case either the said George Spencer, William Spencer, or William Knight die before their arrival at the age of twenty-one years, my brother, Isaac Spencer, is absolved from the payment to any other person of such sum as the deceased would have been entitled to. But my brother, Isaac Spencer, is at full liberty to devise all my estate, real and personal, after complying with the foregoing provisions, to whomsoever he may see proper, but I should like, though I do not

38*

enjoin it upon him, to give the whole, real and personal, to his son, Isaac Spencer, and to his eldest male heir forever, with a request from me that he will act a kind brotherly part by his brothers and sisters, as their situation and need may require.

"It is my further wish that no part of my property be sold at public sale, as I believe all my debts may be paid from the proceeds of my estate in the year 1823, if not before, and none of my negroes to be sold out of the state, except for gross misconduct. Any useless or surplus property can be disposed of at private sale."

This bill was filed by George Spencer, one of the sons of the testator's brother, Jervis, and William Knight, the son of his niece, Charlotte Ringgold, who, together with *William Spencer*, the other son of the said Jervis Spencer, were by the will of the testator, William Spencer, to be put upon a footing of equality with the children of Isaac Spencer, the devisee.

It alleged that the said Isaac, who was appointed sole executor of the will of William, the testator, entered upon and took possession of his estate, real and personal, and received the rents and profits thereof, but that he caused no valuation of the estate to be made, as directed by the said will; that he sold a portion of the real estate much below its actual value, and has mismanaged and wasted the personal estate to a large amount.

That he, the said Isaac Spencer, died on or about the 1st day of November, 1832, leaving a will duly executed, devising and bequeathing his whole estate, including that which he acquired from the said William Spencer, to his children and heirs at law, making William A. Spencer and John Spencer, two of them and two of the defendants, his executors, to whom also letters of administration, *de bonis non*, upon the estate of the said William Spencer have been granted.

The complainants allege that they have arrived at age, but that they have received no benefit from the devise of William Spencer in their favor, either from the said Isaac Spencer, or from his executors, devisees or heirs at law, and they pray an account and payment and for general relief.

The answer of the defendants admits the death of William

Spencer as stated, and that he died seized and possessed of certain parcels of real and personal estate which, by his will, passed to his brother, Isaac Spencer, the father of the defendants. That by the will of William Spencer, his estate was charged with the payment of all his debts, and that after they should be paid (and not before) the valuation and payment spoken of in the will was to be made. That no valuation of the estate of William Spencer was made, as directed by his will; first, because, even if it had been sufficient to pay his debts, its embarrassments were such that time adequate for the purpose was not allowed; and secondly, because the personal estate was overpaid to the amount of upwards of $30,000, including a large debt due to the said Isaac himself, and that besides this overpayment, large claims still remain unsatisfied. That in respect to these overpayments, Isaac Spencer is to be regarded as a creditor of the real estate of William, after deducting the sum of $5,000, received from the sale of a portion of his real estate, situate in Queen Anne's county, which was sold by the said Isaac. That in paying off this large sum, beyond the value of the personal estate of his testator, the said Isaac was compelled to part with portions of his own estate, and to incur heavy individual liabilities. The defendants deny that the annual proceeds of the estate of William were, or even could, in any period of time be rendered adequate to the payment of his debts, the same not being sufficient to keep down the annually accruing interest. They also deny that the real estate which was sold was sold at an undervaluation, or that there has been any mismanagement of the personal estate. They admit the death of Isaac Spencer in 1832 as alleged, and that he left a will, devising and bequeathing his estate to his children, the defendants, as stated in the bill. That he constituted two of the defendants, William A. and John Spencer, his executors and the trustees of his real estate, of which they have taken possession, and that complainants have not received any benefit from the devise in their favor in the will of William Spencer, because, as the defendants insist, nothing will remain of his estate after the payment of his debts. The defendants, though they deny the right of the complainants

to call upon them for an account, proceed nevertheless to state what they believe to have been its annual value during the life of Isaac Spencer, and since his death, and they admit that letters *cum testamento annexo*, *de bonis non*, on the estate of William have been granted to William A. and John Spencer, two of the defendants.

It appeared by an account passed by Isaac Spencer, as executor of William Spencer, on the 4th of January, 1825, in the Orphans Court of Kent county, that the personal estate of the deceased had been overpaid the sum of $3,506 16. The assets, according to this account, consisting of the inventory and cash received by the executor, amounted to $9,886 28.

It also appeared that on the 31st of July, 1835, the additional account of the said Isaac as such executor, returned by William A. and John Spencer, was passed by the Orphans Court, showing an overpayment of $30,673 21. In this account additional assets to the amount of $1,285 06 are charged, and besides the overpayment above stated, credit is taken for $1200 on account of runaway slaves, and for the sum of $17,534 52 appearing to be due the accountant, Isaac Spencer, as per a contract exhibited and passed by the Orphans Court on the 27th of March, 1825.

The contract on which this credit was claimed, bears date on the 27th of June, 1803, and is signed and sealed by William Spencer and Isaac Spencer   It evidences that Isaac had sold to William certain parcels of land belonging to the former in Queen Anne's county, "Conden," "Conden Renewed," "Crompton," "Pearl," and "Sandy Hurt," for the sum of £2500, bearing interest from the 24th of November, 1802, and fifty cords of wood.   Isaac Spencer agreeing to take in part the bond of Nathaniel Peacock for $2000, "and to receive other good bonds for the balance, payable in 1, 2, 3, 4 and 5 years," on payment of the purchase money the title to be conveyed.

Sundry credits are endorsed upon this contract, the first on the 4th of April, 1804, and the last on the 21st of January, 1822.

The complainants pleaded limitations against this claim, as

well as against all the claims for which credits are allowed in the additional administration account, and they excepted to the said last account on several grounds.

It appeared, among other things, by an admitted statement of facts, that all the negroes belonging to the estate of William Spencer, appraised at $1200, absconded soon after his death, and were finally lost, though legal measures were taken to recover them, by his executor, Isaac, and the validity of a large amount of claims against the estate of the former, as paid by the latter, was also admitted, and that at the time of filing the bill, sundry suits at law and equity were depending against the said Isaac, as executor and devisee of the said William ; and the due execution of the contract on which the claim for $17,534 52 was allowed in the Orphans Court was also admitted, and that the credits endorsed thereon are in the handwriting of Isaac Spencer. That the lands mentioned in said contract are the same which came to the hands of Isaac after the death of William Spencer in Queen Anne's county, and described in the proceedings as the "Crompton Estate," and which were sold as aforesaid by the said Isaac, and conveyed by him to the purchasers thereof, but that no deed of the same from Isaac to William can be found. The deed from Isaac Spencer to the purchasers of this land, John A. Hopper and others, is dated the 17th of September, 1831, and is for the consideration of $5000.

It was also admitted that upon the petition of William A. and John Spencer, trustees and executors of Isaac Spencer deceased, filed in the Orphans Court of Kent county, on the 20th of June, 1843, that court passed an order appointing John Carroll Sutton and Thomas J. Mann, to estimate the value of the lands of which William Spencer died seized in the year 1822, as of that year, in virtue whereof, on the 24th of June, 1843, they made an estimate by which they valued his lands in Kent county, containing a little upwards of 1200 acres, at $12 per acre, and his lands in Queen Anne's county, containing between twelve and sixteen hundred acres, at $5 per acre, making an aggregate of $20,922 57, or about that sum.

Under the commissions which have been issued for the purpose, a vast mass of evidence has been collected, the effect of which has been very fully and ably argued by the counsel of the parties, as has also been the construction which should be put upon the will of William Spencer, which lies at the foundation of the controversy.

It is insisted, upon the part of the complainants, that the value of the estate of the testator, William Spencer, should be ascertained at or about the year 1823, the period at which he supposed his debts might be paid, and that they are entitled to two twelfth parts of that value, irrespective of any debts which may have then or may now remain unpaid. That the estimate of the value of the estate of the testator, spoken of in his will, was to be made without regard to his debts, be they great or small, and that these complainants, together with the children of Isaac Spencer, are entitled to be paid their aliquot parts of that estimate when they should attain the age of twenty-one years, though the debts of the estate should exceed in amount the value of his entire estate.

The argument in support of this proposition is, that the language of the will not only makes the sums to be paid to these legatees a charge upon the estate, but by accepting the devise, Isaac Spencer, the devisee, made himself personally responsible, and that being so responsible, he must pay though he loses money. That a devisee who takes and enjoys an estate under a devise like this, must comply with the condition though the value of the property is less than the charges upon it.

It is a general rule, certainly, that when lands are devised, charged with the payment of a legacy, and the devisee accepts of the devise, he becomes personally and absolutely liable for the legacy, and consequently, whether the estate is adequate or not to the payment of the legacy is immaterial. By accepting such a devise, the legacy becomes the personal debt of the devisee, and he must pay it, though the property devised to him be of less or greater value. *Glen and wife* vs. *Fisher*, 6 *Johns. Ch. Rep.*, 33; *Birdsall* vs. *Hewlett*, 1 *Paige*, 32; *The Attorney General* vs. *Christ's Hospital*, 3 *Brown's Ch.*

*Rep.*, 165; *Messenger* vs. *Andrews*, 3 *Eng. Cond. Chancery Rep.*, 761.

But it seems to the Chancellor, that this case is clearly distinguishable from all those which have been cited in support of the proposition contended for. In all of them real estate was devised upon condition that the devisees should pay the plaintiff certain pecuniary legacies of *ascertained amounts*, and by accepting the devises the devisees became personally bound, upon the principle that he who takes a benefit under a will must conform to all its provisions, and set up no rights inconsistent with them. But this will presented no such condition to the devisee, Isaac Spencer. It did not say to him you shall have my estate, real and personal, upon condition that you pay the complainants and the other parties interested certain specified sums of money. Its language is, "after all my debts are paid, you are to call in two discreet persons (consulting if you please the Orphans Court as to the persons) to make an estimate of the real value of all my estate, real and personal," and then, at a certain period, that value so ascertained was to be paid by the devisee in equal portions to the complainants and certain other persons described in the will. It is true the testator expressed an opinion that his debts could be paid at a very early day, without selling any portion of his estate, but still the estimate of the value was to be made after the payment of the debts, and it was only what should remain after such payment that was to be valued and paid to the complainants and the other parties.

The terms employed by the testator in effect are these: you are to pay my debts first and then you are to cause a valuation of my property to be made, and the amount of such valuation you are to pay to certain parties in the proportions designated by me. It seems impossible to say that by accepting such a devise as this, Isaac Spencer became bound to pay the entire value of the estate of William to the complainants and others, without regard to the debts. If such had been the intention of the testator, and if he had designed to put any such alternative to his devisee, why not direct a valuation to be

made immediately after his death, instead of postponing it until after the payment of his debts? Why, indeed, say anything at all upon the subject of debts, when the estimate, according to the argument of the complainants, was to be made, wholly irrespective of them?

Upon this first point, then, I am of opinion that the estimate directed to be made by William Spencer of the value of his estate, was not to be made irrespective of his debts, but that the sum, to a portion of which the complainants are entitled, is to be ascertained by deducting from such estimate the amount of the debts.

The next point discussed has reference to the credit of $17,534 52, allowed in the additional account passed on the 31st of July, 1835.

To the allowance of this credit a number of objections are urged.

1st. It is insisted that the devise to Isaac by William Spencer, is to be taken as a satisfaction of this debt upon the principle that where a debtor bequeaths to a creditor a legacy equal to or exceeding the amount of his debt, it shall be presumed, in the absence of any intimation of a contrary intention, that the legacy was meant by the testator as a satisfaction of the debt.

Though such a rule as the above does prevail in courts of equity, it is certain that it has been much censured, and that very slight circumstances have been permitted to rescue particular cases from its operation. I am of opinion that some one or more of the exceptions to the rule as stated in 2 *Williams on Executors*, 805, 806, apply to this case, and that consequently the devise to Isaac Spencer is not to be regarded as a satisfaction of the debt due him. See also *Partridge* vs. *Partridge*, 2 *Har. & Johns.*, 63; and *Owings* vs. *Owings*, 1 *Har. & Gill*, 484, 491.

It is also insisted that this claim is barred by lapse of time, and the act of limitations relied on by the complainants.

I am clearly of opinion, that so far as the personal estate is concerned, the objection cannot be sustained, as the creditor

being himself the executor, could institute no suit for the recovery of the debt. *State, use of Stevenson* vs. *Reigart*, 1 *Gill*, 1. Besides, by our testamentary system, the interposing the plea of limitations is referred to the honesty and discretion of the executor or administrator, and he, and he alone, can make the objection. *Act of* 1798, *ch.* 101, *sub ch.* 9, *sec.* 9.

But with regard to the right of these complainants to file this plea for the protection of their interest, whatever it may be, in the real estate of William Spencer, more doubt may be entertained.

It seems to be settled that a trust in a will to pay debts upon which the statute of limitations has closed at the time of the death of the testator, will not revive them. This is the conclusion to which Chancellor Kent came after an examination of all the cases, and I am aware of no decision in this state or elsewhere to the contrary since. *Roosevelt* vs. *Mark*, 6 *Johns. Ch. Rep.*, 266, 293. The opinion of the Chancellor is in accordance with the decision in *Burke* vs. *Jones*, 2 *Ves. & Bea.*, 275, which he considered as announcing and establishing the true and reasonable doctrine upon the subject.

It might, perhaps, be questioned whether the statute of limitations had actually taken effect upon this claim at the death of William Spencer. The contract upon which it is founded does not very clearly specify when the money for the land sold by Isaac to William Spencer was to be paid. The agreement provides that Peacock's bond for $2000, and other bonds payable in 1, 2, 3, 4 and 5 years, shall be taken by the vendor in satisfaction of the purchase money, but there is no engagement on the part of the vendee to pay at a specified period, nor does it clearly appear at what time an action could have been instituted by Isaac Spencer upon this contract, and until then, of course, limitations did not begin to run. It is possible that no suit could have been brought against William Spencer upon this contract, until proceedings had been exhausted upon the bonds of Peacock and others.

The defendants, however, insist, that conceding that the statute of limitations had taken effect upon this claim before

the death of William Spencer, still these complainants have no right to interpose the plea, because by the will creating a trust in Isaac Spencer to pay the debts of the testator, he, and he alone, had authority to plead it.

In the cases referred to by the complainants' counsel, the plea was put in by the trustees charged with the payment of the debts, and I incline to think, if waived by them, it cannot be relied upon by others. In *Burke* vs. *Jones*, 2 *Ves. & Bea.*, 278, the implication is very strong that in a will creating a trust for the payment of debts, the discretion in regard to the payment is given to the executor of the testator, and that upon the executor alone the power is conferred to rely upon the defence of limitations. The language of the Vice-Chancellor is, "the executor is not directed expressly to plead the statute, nor is there any implication of such intention, but it is to take the ordinary course; his debts are to be discharged, *but the investigation of them is left to the executor*, under the direction of the courts of law and equity." Again : "the plain line is that the testator intends the courts of law and equity to determine what are just debts, *leaving his executor at liberty to use all means of resistance prescribed or allowed by the law.*" *Ibid.*, 290, 291.

Looking to the language of this will, I am of opinion that the testator designed to confer upon Isaac Spencer a discretion which allowed him to pay such debts as he might deem honest, and that it is not competent for these complainants, not only without the consent of the trustee and executor, but in opposition to a claim due him, to rely upon this defence.

The case of *Sheriff* vs. *Wilson*, decided by the Court of Appeals, at December term, 1841, is, in some respects, very much like the present, and may, I think, be regarded as sanctioning the doctrine that when a trust is created by a will for the payments of debts, the trustee is the only party who can put in this plea. Under such circumstances, the trustee must be regarded as the person whom the testator selects for the protection of his entire estate, real and personal, and with reference to both as standing in the relation which an executor stands to the personal estate.

I am of opinion, therefore, that the act of limitations is no bar to this claim as pleaded by the complainants, either as to the real or personal estate of William Spencer.

In further answer to this plea, the defendants contend, and with much force, that as the complainants read the credits endorsed on the contract between Isaac and William Spencer, for the purpose of getting the benefit of them, they are thereby precluded from relying upon the defence of limitations, the last of these credits being as late as January, 1822.

The *third* question presented by this record, and argued by the solicitors, has relation to a credit claimed by the defendants for moneys paid by them under the decree in the case of *Spencer* vs. *Pearce*, reported in 10 *Gill & Johns.*, 294. To this claim for a credit, so far as concerns the money received by the late William Spencer, the Chancellor understands there is no objection; but the complainants insist that no credit should be allowed for the amount which was lost by what is alleged to have been the neglect of Isaac Spencer and his representatives in suffering the land sold to Terry by William Spencer to remain in the possession of the former from 1822, when William Spencer bought it at the sheriff's sale, to 1839, when it was sold under the decree of the Court of Appeals.

The Chancellor has examined this question, and he thinks the defendants are not entitled to this credit. There was, in this respect, he thinks, a want of that diligence which a trustee is bound to exercise when he undertakes a trust. The cases referred to in 2 *Williams on Executors*, 1110, are believed to sustain this position.

The *fourth* question which I am called upon to decide is, whether Isaac Spencer is to be charged only with the $5000 for which he sold what is called the "Crompton Estate," in September, 1831, or with $10,000, which it is alleged he was offered or might have sold it for at an earlier period.

As however, the order which I am about to pass will direct the value of the estate after deducting the debts to be ascertained as of the year 1822, there does not appear to be any necessity for the expression of an opinion upon this point.

The *fifth* and last question relates to the mode in which the value of the estate is to be ascertained.

My opinion is that the nearest approximation to the justice of the case will be attained by making an average of the testimony of the various witnesses who have testified upon the subject, and that mode will accordingly be adopted by the Auditor in taking the account which will be directed.

The defendants' counsel have insisted very strenuously that inasmuch as it is apparent (as they say) that the entire estate was inadequate to pay the debts at the death of William Spencer, no account should be ordered.

But the Chancellor has not the materials before him upon which he can safely rest a judgment upon this subject, and the case must, therefore, go to the Auditor for the purpose of stating such account or accounts as may be required to present the case in a form for final decision.

Since the argument in this case, the administrator of Jervis William Spencer has been made a party in conformity with the suggestion of the court, made shortly afterwards.

This case standing ready for hearing, and having been argued by the solicitors of the parties, the proceedings have been read and considered, and for the reasons stated, the Chancellor is of opinion that the cause must be referred to the Auditor, with directions to state such account or accounts as may be necessary to exhibit the rights of the parties, as those rights are herein adjudged by the court, and may appear by the evidence.

It is, thereupon, this 16th day of November, in the year 1847, ordered and adjudged that this cause be, and the same is hereby referred to the Auditor, with directions to state an account or accounts, according to the following directions, that is to say, he will ascertain the value of the estate of the late William Spencer, real, personal and mixed, which came to the hands of his executor and trustee, the late Isaac Spencer, at the period of the death of the said William, in the year 1822. This ascertainment is to be made by an average of the evidence of the several witnesses who have testified upon the subject.

The Auditor will also ascertain from the proof the amount

of the debts of the said William Spencer at the same period, including the amount which may have been due the said Isaac at that time upon the contract between him and the said William Spencer, dated the 27th of June, 1803, which the Chancellor thinks should be allowed.

In determining the amount of the credit to be allowed on account of moneys paid, or to be paid, by the defendants, or any of them, under the decree of the Court of Appeals, in the case of *Spencer* vs. *Pearce*, decided by that court in 1839, the Auditor will exclude such portion of the money so paid, or to be paid, as was lost by the neglect or omission of the said Isaac Spencer or his representatives, to take possession of the property mentioned in the proceedings in that case, in the year 1822, and in permitting it to remain in the possession of Benjamin Terry from that time until the year 1839. And it is further adjudged and ordered, that the accounts so to be taken shall be stated from the pleadings and proofs now in the cause, and such other proofs as may be laid before the Auditor by parties, and the parties are hereby authorized to take depositions before any justice of the peace, on giving three days notice, as usual, to the opposite party, or his or their solicitor, provided the said depositions are taken and filed in the Chancery office on or before the 1st day of January next.

OTHO SCOTT and JAMES A. PEARCE, for Complainants.
THOS. S. ALEXANDER and WM. A. SPENCER, for Defendants.

[No appeal was taken from this order.]