EDWIN S. HOUCK *vs.* HENRY C. HOUCK AND BELLE HOUCK.

*Decree for Sale of Property Reserving Right of Claimants to Proceeds—Dismissal by Orphans' Court of Creditors' Claim Against Estate—Limitations—Acknowledgment of Debt—Waiver of Statute by Executor—Interest on Unpaid Legacy.*

When a decree directing the sale of property is passed under an agreement which reserves to the parties the right to offer proof as to their claims against the property, the fact that the decree directs the sale to be made for the purpose of partition does not preclude a party from asserting an independent claim against the proceeds as a creditor of the deceased owner.

The fact that the Orphans' Court dismissed the petition of a party asking that a distribuiton account be set aside in order that the petitioner's claim as a creditor of the estate might be paid does not prevent such party from afterwards filing a bill in equity to enforce his claim. The determination of the Orphans' Court concerning claims against the estate of a decedent is not final.

When one of the parties entitled to an interest in an estate states to another that the latter will receive every cent of the legacy bequeathed to him for which the deceased owner of the estate was liable, that is a sufficient acknowledgment of the claim to remove the bar of the Statute of Limitations, as to the party making it.

An executor has the right to waive the defense of the Statute of Limitations against a claim so far as the personal property of the decedent is concerned, but he does not have that right as against the heirs or devisees of the real estate.

A testator bequeathed the proceeds of an insurance policy to his son H. in trust for the benefit of the latter's son C., to be paid to C. upon his arrival at the age of twenty-one. The trustee H. collected the policy, mingled the proceeds with his own estate, and died leaving a will by which he gave all his property to his wife until C. reached the age of thirty, when he gave one-third of his estate to C. and the remaining two-thirds to his wife and another son. The executrix of the will, who was the wife of H, settled an account in the Orphans' Court by which she was allowed the whole balance of the estate. Some years afterwards, when C. reached the age of thirty, he filed a petition in the Orphans' Court, stating that he had never received the legacy given by the will of his grandfather, and asking that the account stated by the executrix of his father's will be set aside. The Orphans' Court dismissed this petition, and then C. filed a bill in equity asking that the property passing under the will of his father be sold for partition among the three legatees, and also that his claim as legatee under the will of his grandfather might be paid. *Held,* that C. is entitled, from the proceeds of sale, to the amount collected by H. on the policy, with interest thereon from the time of collection until he became twenty-one years of age.

*Held,* further, that no part of this interest ·from the time the
estate of H. was distributed to his wife, should be charged
against the share of the other son, but that the same should be
deducted from the wife's share.

*Held,* further, that the executrix of H. is entitled to receive
from the proceeds of sale the amount of certain payments
made by her on account of the estate and not allowed in the
distribution account.

*Decided January, 12th, 1910.*

Appeal from the Circuit Court No. 2 of Baltimore City
(SHARP, J.).

The cause was argued before BOYD, C. J., PEARCE,
SCHMUCKER, BURKE, THOMAS and PATTISON, JJ.

*Robert Biggs* and *Frank C. Stoner,* for the appellant.

*Alfred J. Carr* and *R. D. Coe,* for the appellees.

THOMAS, J., delivered the opinion of the Court.

Henry Houck, of Frederick County, Maryland, died in
1887, leaving a last will and testament by which he made the
following bequest: "I give and bequeath unto my son, Henry
J. Houck, in trust for the sole benefit and use of my grand-
child Henry Christopher Houck, son of my said son, Henry
J. Houck, all of my interest in an endowment insurance
policy taken on the life of my son Henry J. Houck and as-
signed and transferred to me; the said policy is for the sum
of $2,500.00 and additional insurance or accumulations;
the premium on said policy was paid by me from its com-
mencement in the Mutual Life Insurance Company of New
York, No. 105929; he, the said Henry Christopher Houck
is not to receive the said legacy until he arrives at the age
of twenty-one years which will be on the twenty-ninth day
of November, in the year eighteen hundred and ninety-
eight; if my decease occurs before the policy becomes due,

in that event I request and charge my son Henry J. Houck to pay the annual premium on said policy, first by using the annual dividend declared on said policy, and the balance to be paid out of the portion of my estate hereinafter bequeathed to him."

In 1888 Henry J. Houck, the executor named in said will, settled his final account in the Orphans' Court of Frederick. County, in which there was distributed to him in trust for Henry C. Houck, his son, the policy of insurance referred to in the will of Henry Houck. Henry J. Houck died in 1892 leaving a last will and testament by which he appointed his wife, Belle Houck, his executrix, and disposed of all his property as follows:

"*Item* 1.—After the payment of my just debts and funeral expenses, I give, devise and bequeath all my property and estate, real, personal and mixed, wheresoever situate or being and whether in possession, remainder or reversion unto my wife Belle Houck during her natural life or until my son Harry Houck arrives at the age of thirty years, when upon the happening of either event, I give, devise and bequeath all of my said estate to my said wife, Belle Houck, if living and my sons Harry Houck and Edwin S. Houck absolutely forever, to be divided equally between them share and share alike, a child or children of a deceased child to be entitled to the interest of my estate of his or their parent.

"*Item* 2.—Should my son Harry Houck die during the lifetime of my said wife and before he arrives at the age of thirty years without issue living at the time of his death, then I devise and bequeath all my said estate to my said wife Belle Houck and my said son Edwin S. Houck absolutely, but in case my said son Harry Houck should die during the lifetime of my said wife leaving a child or children living at the time of his death, then I direct that my said estate shall be divided into three equal parts, and I devise and bequeath one-third each to my said wife and my said son Edwin S. Houck and one-third to the child or children of my

said son, Harry Houck, living at the time of his death, absolutely."

Mrs. Belle Houck, as executrix, settled her first account in the Orphans' Court in Baltimore City in January, 1894, in which, after the payment of the costs of administration, etc., she was allowed, under the terms of the will, the whole balance of the estate consisting of leasehold property in Baltimore City, valued at $2,000.00 and bonds and stocks to the amount of $18,196.00. A few weeks thereafter she settled her second account in said Court, and was allowed under the provisions of the will, other bank stocks, valued at $520.00. On January 14, 1908, Henry C. Houck, having arrived at the age of thirty years on the twenty-ninth of November, nineteen hundred and seven, filed a petition in the Orphans' Court of Baltimore City, in which, after setting out the facts stated above, he alleged that his father, Henry J. Houck, received on the third of January, eighteen hundred and ninety, from the Mutual Life Insurance Company of New York on account of said policy, the sum of $2,977.97; that no part of said sum had ever been paid to him, and that the same, with interest thereon, was still due and owing, and praying that the accounts settled by his mother, as executrix of Henry J. Houck, be set aside and restated, etc. This petition was endorsed by Mrs. Belle Houck as follows: "I, the executrix of the estate of Henry J. Houck, admit the matters and things stated in the foregoing petition, and consent to the passage of an order as prayed." The petition was answered by Edward S. Houck, denying that the said sum of $2,977.97 or any part thereof was due and owing, and charging that the petitioner had "been guilty of gross negligence in asserting his claim," and that the Orphans' Court had no jurisdiction in the matter. The Orphans' Court, on the 27th day of February, 1908, passed an order dismissing the petition, and on the following day, the appellees, Henry C. Houck and Ella Houck, his wife, filed their bill of complaint in the Circuit Court No. 2 of Baltimore City, against Mrs. Belle Houck and Edwin S.

Houck and his wife, setting out the provisions of the will of his grandfather, Henry Houck, and the will of his father, Henry J. Houck, and alleging that the policy of insurance was distributed to Henry J. Houck to be held by him in trust for the appellee, Henry C. Houck; that Henry J. Houck received, on the second of January, 1890, from the insurance company $2,977.97 on account of said policy; that said sum of $2,977.97 has not been paid and that the same, with interest thereon, is still owing to the appellee; that at the time the defendant, Mrs. Belle Houck, executrix, etc., settled said accounts in the Orphans' Court, copies of which are filed with the bill, said appellee was only about sixteen years of age, and that he was informed, and believed that he was not entitled to receive anything from the estate of his grandfather or from the estate of his father until he was thirty years of age, and had, therefore, made no inquiry as to the facts until he arrived at the age of thirty years; that the claim of the appellee had been presented to and approved and passed by the Orphans' Court; that Henry J. Houck, at the time of his death, was possessed of certain leasehold property in Baltimore City, four $100.00 North Carolina Bonds, two $100.00 bonds of the City of Norfolk, 39 shares of the National Union Bank of Maryland, $1,100.00 worth of the stock of the Unequal Perpetual Building and Loan Association of Baltimore City, 80 shares of the National Bank of Commerce, 15 shares of the National Exchange Bank, 7 shares of the German American Fire Insurance Company, $10,-000.00 in the preferred stock of the Southern R. R. Company and 13 shares of Farmers and Mechanics National Bank of Baltimore, and that he was also seized and possessed of a lot of ground in Snow Hill, Maryland; that the appellee arrived at age of thirty years on the 29th day of November, 1907; that all the debts of the said Harry J. Houck had been paid, except the debt due the appellee, Henry C. Houck, and the debt due the said Belle Houck; that the said property was not susceptible of partition without loss and injury to the parties interested, and that it would be to their advantage to

have said property sold and the proceeds of sale, after the payment of the debts due the appellee and Mrs. Belle Houck, distributed to the parties according to their respective interests. The prayer of the bill was for a decree for the sale of the property; for the payment of the amount due the appellee; for a distribution of the balance of the proceeds of sale, and for general relief.

The bill was answered by Edwin S. Houck and his wife, admitting that Henry C. Houck was only sixteen years of age when the accounts were stated by his mother, as executrix of Henry J. Houck, in the Orphans' Court; denying the claims of the appellee and Mrs. Belle Houck; averring that the Orphans' Court had no authority to approve and pass the appellee's claim, and setting up the defense of limitations and laches, but consenting to the passage of a decree for the sale of the property referred to in the bill, and reserving to the plaintiffs and defendants the right, after the passage of the decree, to offer proof "on the question of the allowance or disallowance" of the claims, and stating that the consent given to the passage of a decree for the sale of the property was "in no wise to reflect upon the validity or existence" of the claims. Mrs. Belle Houck also answered, admitting the facts alleged in the bill, and asserting her claim for $27.00 paid a creditor of the estate, and for $498.52 paid by her in the settlement of the accounts in the Orphans' Court. Testimony was taken; it was admitted by counsel before the examiner that Harry J. Houck received on the 2nd day of January, 1890, from the Mutual Life Insurance Company $2,977.97 on account of the policy mentioned in the will of Henry Houck and evidence was offered tending to prove the other facts alleged in the bill, and that Edwin S. Houck, in the spring of 1905, told the appellee when speaking of the sum of money coming to him, that he should receive every cent due him, as he, Edwin S. Houck, had received a like amount in 1888. Counsel, reserving the right to offer further evidence before the auditor in support of and against the claims of the appellee and Mrs. Houck, submitted the

case for a decree; a decree was passed for the sale of the property, the property was sold, and after a report and ratifications of the sales, the case was referred to the auditor, who filed an account, allowing the claim of Mrs. Belle Houck, to the amount of $533.61, for over payments of administration accounts and a debt paid Wm. A. Scott, and the claim of the appellee, Henry C. Houck, to the extent of $2,977.97 received by Henry J. Houck, January 2nd, 1890, and interest thereon to November 27th, 1898, when appellee became twenty-one years of age, amounting to $4,568.72, and distributing the balance, after the allowance of costs, commis· sions and counsel fees, etc., to Mrs. Belle Houck, Edwin S. Houck and Henry C. Houck, as provided by Henry J. Houck's will. Edwin S. Houck filed exceptions to the allowance of these claims, denying the existence of the claims, repeating his defense of limitations and laches, and asserting that Mrs. Houck had theretofore filed a petition in the Orphans' Court "praying among other things, to open the accounts—for the purpose of establishing her right to" the amounts allowed her in the account of the auditor, "and after a hearing in the Orphans' Court" her petition was dismissed. Further evidence was offered, and after a hearing, the Court passed an order overruling the exceptions and ratifying the account of the auditor, and from that order Edwin S. Houck has appealed.

The appellant relies mainly upon his defense of limitation and laches, and the supposed effect of the order of the Orphans' Court dismissing Henry C. Houck's petition to open the accounts of the executrix of Harry J. Houck, and further contends that the effect of the decree of the Circuit No. 2, decreeing a sale of the property without any reference to the claims of the appellee and Mrs. Houck, is to preclude the allowance of said claims out of the proceeds of sales. In support of this latter contention he relies upon the case of *Rice* v. *Donald,* 97 Md. 398. In that case a bill was filed by the heirs of Mrs. Donald for the sale of the real estate of which

she was alleged to have died seized and possessed, the defend-
ants answered admitting the facts alleged in the bill, and a
decree was passed for a sale of the property.  The property
was sold, the sale was ratified, and the auditor stated an ac-
count, in which, after the allowance of costs, etc., and the
amount of a mortgage claim, he distributed the balance to
the heirs at law of Mrs. Donald.  James Rice, one of the
defendants, then filed exceptions to the audit, claiming that
the property sold belonged to his father and that the pro-
ceeds of sale should be audited to him as the sole heir at law
of his father, and it was under such circumstances that this
Court, speaking through JUDGE SCHMUCKER, held that "His
rights under the exceptions filed in his individual capacity
must be tested from the standpoint of an original party to
the suit after the passage and enrollment of the final decree
for the sale of the land for the purpose of partition.  That
decree, construed, as it should be, with reference to the issues
presented by the pleadings, determined as between the parties
to the suit that Margaret Donald died intestate seized of the
land described in the bill and that her heirs at law were the
persons named as such in the bill and that their relationship
to each other was as therein stated and that the land should
be sold and the proceeds divided under the Court's direction
among the persons thus ascertained to be her heirs at law ac-
cording to their respective interests therein.  *Pfeltz* v. *Pfeltz,*
1 Md. Chy. 455; *Brown* v. *Thomas,* 46 Md. 640.  After the
decree was enrolled no party to the case could, by exceptions
to the auditor's account or by petition or any similar proceed-
ing, vary or alter its effect."  Here the decree for the sale of
the property was passed upon the distinct agreement of the
parties, forming a part of the record in the case, that all
questions, as to the allowance of the claims were to be re-
served and be disposed of in the distribution of the proceeds
of sale, and that the decree should "in no wise" affect the
validity of the claim, and it is, therefore, apparent that the
rule applied in *Rice* v. *Donald* does not apply in this case.

Nor can the order of the Orphans' Court, dismissing the petition of Henry C. Houck to open the accounts of the executrix of Henry J. Houck, have the effect claimed by the appellant. That Court had already passed his claim, and that was as far as it could go. It had no power to determine the rights of the claimant against the estate, or to order the payment of the claim, and its order dismissing the petition did not affect the appellee's right to enforce his claim in a Court of law or equity. In the case of *Levering* v. *Levering,* 64 Md. 413, the Court said: "The Orphans' Court can pass upon claims against the estates of decedents, but its determination is not final nor conclusive. If the claim is disallowed, the claimant is not precluded from seeking his remedy in a Court of law or equity. If the claim is allowed, the executor or administrator may refuse to pay it. The decision of the Orphans' Court is only *prima facie,* and if the claim is allowed, only operates as a protection extended to the executor in the event of its liquidation by a disbursement of the funds held by him in his representative capacity. * * * And 'claims of executors and administrators stand on the same footing with those presented by other creditors of deceased persons.' * * * The Orphans' Court with its limited powers and circumscribed jurisdiction, cannot finally and conclusively determine any claim brought by a creditor against the estate of a decedent. * * * The adjudication and conclusive determination of matters in controversy between an executor or administrator and creditors, appertain 'exclusively to the Courts of law and equity.' "

In respect to the defense of limitations to the claim of Henry C. Houck, it is only necessary to refer to the acknowledgment of the claim by the executrix of Henry J. Houck's estate, and by the appellant. Henry C. Houck testified as follows: "My brother (referring to the appellant) in the spring of 1905, when he was visiting in Baltimore, told me in the halls of the University of Maryland, when he was speaking of the sum of money coming to me, that every cent

of money owing to me I would receive. He informed me he received a like amount sometime about September 6, 1888." By his grandfather's will, Edwin S. Houck was bequeathed the sum of $5,000 which was paid to him September 6, 1888, by his father, as the executor of his grandfather's estate. Viewing the statement of the witness, Henry C. Houck, in the light of that fact, it means that his brother said that there was coming to him a like sum from his grandfather's estate, and that he would receive every cent of it, and we think, upon proof of the amount due the appellee from his grandfather's estate, it was a sufficient acknowledgment of his claim to remove the bar of the statute. In *Shipley* v. *Shilling,* 66 Md. 562, CHIEF JUDGE ALVEY says: "The testimony of Benson is explicit to the fact that the testator admitted that the appellee had an account against him, the testator; and Hull testifies that he heard the testator say that he owed the appellee an account; though on neither occasion of making these admissions, was there any account exhibited, or specially mentioned. Such statements, it is true, are very indefinite in their nature, and do not prove, or tend to prove, the items charged in any particular account. But after the correctness of the account sued on is otherwise proved, according to the requirements of the law, such general acknowledgments, if it be found that they were intended to apply to the account so proved, will be deemed sufficient to remove the bar of the Statute. * * * But when the new promise is sought to be deduced from a general indefinite acknowledgment, such as is relied on in this case, the question is one for the jury to determine, whether the acknowledgment of the debtor within the period of limitation, applies to the original demand sued on or not. The jury must find to what debt or claim the admission or general acknowledgment referred; and if the plaintiff shows but a single indebtedness it may apply to that; or if the demand sued for be an account of several items, it may apply to any part thereof, according to the evidence and the finding of the jury. And, in such case, if the

debtor alleges that there was a different account or demand to which the general acknowledgment referred, the *onus* of proving that fact rests upon him, as matter of defense." See also *Beeler* v. *Clarke,* 90 Md. 221.

But independent of any acknowledgment by the appellant, the acknowledgment of the claim by Mrs Belle Houck, the executrix of the estate, found in the record, is sufficient to bind the personal estate of Henry J. Houck, and the defense of limitations interposed by the appellant can only apply to the proceeds of sale of the real estate devised, which constitutes but a small part of the sum distributed in the audit, and could not affect the distribution made. `Spencer` v. *Spencer,* 4 Md. Ch. 456; *Post* v. *Mackall,* 3 Bland, 499; *Cullison* v. *Owings et al.,* 6 G. & J. 4; *Gordon* v. *Small,* 53 Md. 559; 13 *Am. & Eng. Ency. Law,* 707. This applies also to the defense of limitations to the claim of Mrs. Houck.

The defense of laches cannot afford the appellant any greater relief. In the case of *Demuth* v. *Old Town Bank,* 85 Md. 326, CHIEF JUDGE MCSHERRY says: "Strictly speaking and using the term as it is understood in the law, laches is such neglect or omission to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing *prejudice* to an adverse party, operates as a bar in a Court of equity. * * * Obviously, then, there must be a legal duty to do some act, a failure to do that duty and attendant circumstances which cause *prejudice* to an adverse party before the doctrine can be successfully invoked." In this case the appellant was not entitled to receive any part of the estate of Henry J. Houck, until Henry C. Houck arrived at the age of thirty years and the failure of Henry C. Houck and Mrs. Belle Houck to assert their claims before that time could not, in any way, have prejudiced him.

After carefully considering the evidence in the case we do not find any reason for refusing to allow either of these claims. Mrs. Houck was entitled, under the terms of her husband's will, to the enjoyment of his estate until her son,

Henry C. Houck, arrived at the age of thirty years. Having paid the amounts allowed by the auditor she was entitled to be reimbursed out of the estate. The uncontradicted evidence in the case is to the effect that Henry J. Houck received from the insurance company $2,977.97 on account of the policy bequeathed to him in trust for his son, Henry C. Houck, and that he mingled the same with his own estate. If he had lived until his son arrived at the age of twenty-one years, he would have been liable for the amount so received by him with interest thereon, and there is no reason why his estate should not be required to pay the same amount. The auditor only allowed interest on this claim from the time the money was received by Henry J. Houck to the time when Henry C. Houck became twenty-one years of age, and as Henry C. Houck has not appealed that allowance will not be disturbed. But Mrs. Houck was only entitled to the balance of the estate of her husband remaining after the payment of his debts. At the time she, as administratrix, settled his estate she should have accounted for the amount due Henry C. Houck, and was not entitled to receive, for her own use, the income on that amount. As she did not do so, but received and enjoyed the income from the *whole* estate, including the amount due Henry C. Houck, no part of the interest on the $2,977.97, from the time she settled the estate to the time he reached the age of twenty-one years, should be charged against the share of Edwin S. Houck, who was receiving no benefit from the estate of his father. One-third of the interest allowed by the auditor on the $2,977.97 from the time the executrix stated her first account in the Orphans' Court to the time Henry C. Houck became twenty-one years of age, should, therefore, be added to the amount distributed by the auditor to Edwin S. Houck and be deducted from the amount distributed to Mrs. Belle Houck, and the order of the Court below will be affirmed as to the claim of Henry C. Houck, and reversed as to the claim allowed Mrs. Belle Houck, and the case will be remanded in order that the Court may, in ratify-

ing the account of the auditor, require the trustees, in paying out the trust fund, to make such addition to the amount distributed to Edwin S. Houck and deduct the same from the amount allowed Mrs. Belle Houck on account of her claim, it appearing that she has received her share of the balance of the estate.

> *Order affirmed in part and reversed in part, and case remanded for further proceedings in accordance with the views herein expressed, the appellant and Mrs. Belle Houck each to pay one-half of the costs in this Court and the costs of the exceptions to the audit in the Court below.*