McDowell et al. *vs.* Goldsmith.

---

GEO. McDOWELL AND OTHERS *vs.* SAMUEL H. GOLDSMITH.

LIMITATIONS : JUDGMENT,—CONFESSION OF BY ADMINISTRATOR CANNOT DEPRIVE THE GRANTEE OF HIS INTESTATE OF THE DEFENCE OF LIMITATIONS.—In August, 1845, the creditors of O, grantor in a conveyance of real estate, filed a bill to set aside said deed as fraudulent. G, the defendant and grantee in said deed, pleaded the state of limitations, and the cause being heard on bill and exhibits, answer and testimony taken, a final decree was passed dismissing the bill as to certain of the complainants and other creditors who had come in by petition, which decree upon their appeal was affirmed and the cause remanded. The final decree having directed the sale of the real estate for the payment of other claims thereby allowed, upon its affirmance, the trustees therein named proceeded to advertise the property for sale, giving the usual notice to creditors, under which certain of said complainants and creditors having obtained judgments by confession against the administrator of O, again filed their claims. New claims were also filed under said notice, to all of which the defence of limitations was taken by G, by way of exceptions to the auditor's reports and accounts.    HELD :

That the defendant having been held by the Chancellor and Court of Appeals entitled to the defence of limitations to the claims of the creditors assailing the deed, the administrator of O could not deprive him of that defence by any admissions or acts whatever.

McDowell et al. *vs.* Goldsmith.

———: ———: PRACTICE IN EQUITY.—The final decree of the Chancellor "reserved for further directions," all questions in regard to the claim of one of the complainant, T, on a note made in 1844 for $2,800. It subsequently appeared that said note was for a debt contracted after the execution of the deed and did not mature until October, 1845, after letters were granted, (August 27th, 1845,) and two months after the said bill was filed, and was not filed as a claim in the cause until December, 1850. The administrator of O had also confessed a judgment in favor of this claimant. HELD:

That the claim of T was barred by the defence of limitations, relied on in the answer of G to the bill of complaint, it appearing that limitations began to run in 1845, a period of more than three years before the claim was presented or asserted by any proceeding in the cause.

That T had the right at the maturity of the note, if not before, to become a party to the said suit with respect to it; but to bring it within the equity of the bill already filed, it was necessary to present the note and assert it as a claim in the cause.

That the confession of the judgment by the administrator does not affect the nature of the claim.

LIMITATIONS: PRACTICE IN EQUITY: EXCEPTION PRESENTING SUBSTANTIALLY THE DEFENCE OF LIMITATIONS SUFFICIENT.—Where an exception to claims filed under a notice to creditors presents in substance the defence of limitations, it will be held sufficient: the substance of the objection or defence must govern in determining its sufficiency rather than the form in which the objection or defence is presented.

APPEAL from the Circuit Court for Baltimore City.

This appeal is taken from an order of the Circuit Court for Baltimore City, passed 31st May, 1861, whereby the auditor's accounts A and B are finally ratified, and the exceptions to his account C are sustained, and that account is rejected. The original bill was filed by McDowell and others claiming to be creditors of one Elizabeth Osborne, deceased, for the purpose of avoiding certain conveyances made by her to Goldsmith in fraud, as it was alleged, of her creditors. In the progress of the cause, others claiming likewise to be creditors intervened, and on the hearing of the cause the late Court of Chancery, on the 21st October, 1851, passed a decree, whereby one of said conveyances was vacated and declared null and void as against the com-

McDowell et al. *vs.* Goldsmith.

plainant, Sarah Ann Truitt, claiming as the holder of the promissory note of the deceased for $1,100, and dated 6th November, 1843, "and such other creditors of the deceased as shall hereafter come in under this decree and establish their claims to the satisfaction of this Court," and for the payment of said claims the property assigned by said deed is decreed to be sold, &c. The decree further provides that all questions in regard to the claim of the said Sarah Ann Truitt, on the promissory note of the deceased, for the sum of $2,800, and dated the 21st October, 1844, be "reserved for further directions," and that the bill of complaint be absolutely dismissed as against George McDowell and John Gable, Charles Z. Lucas and Wiley Lankford, complainants named in the original bill of complaint; and as against Walter Crook, Junior, David Arden, Ann Maria Vickery, Benjamin Harrison, William H. Harrison, John Easter of John, Hamilton Easter and William J. Hyde, Hamilton Easter, John B. Charron, William Pierson, Ira B. Canfield and William H. Canfield, petitioners named in said petition and thereby claiming to be creditors of the deceased.

All parties appealed from this decree; but on hearing, the same was affirmed at December Term, 1854, and the cause was remanded to the Circuit Court for further proceedings. *See* 2 *Md. Ch. Dec.*, 370, *and* 6 *Md. Rep.*, 319.

The trustees immediately after this affirmance proceeded to advertise the property for sale, and at the same time, in accordance with the terms of the decree, gave notice to the creditors of Osborne to file their claims properly authenticated in the office of the clerk of the Circuit Court for Baltimore city, within two months from the day of sale.

Goldsmith then filed a petition stating that he was ready, and had offered to pay the allowed claim of Truitt, and that he believes no other claim can be established under the de-

cree, unless it be the suspended claim of said Truitt, which he is prepared to litigate, and will pay if it shall be established, and praying that the sale may be suspended. The trustees answered this petition, asserting it to be their duty to sell under the decree, denying that no other claims but Truitt's can be established, and on the contrary averring that claims to the amount of several thousand dollars can and will, as they believe, be established under the decree ; that they have already notice of several such claims admitted to be just and true by the administrator of said Osborne, and have reason to believe there are many more which will in due time be proven and established. The Court passed an order directing the defendant to bring in the amount of Truitt's allowed claim, and ordering the trustees to desist from making the sale, but directing the advertisement and notice to creditors to be continued to the day of sale, to the end that creditors may have notice to bring in their claims as provided by the decree. The trustees entered an appeal from this order, which was not prosecuted, because by agreement a sale of the property for $10,000 was subsequently effected to Stewart, the trustee of the defendant's wife, upon certain terms and conditions which need not be particularly stated. This sale was reported and finally ratified on the 10th of October, 1857.

Claims properly authenticated of many creditors were then filed under this decree and notice, and prior to the statement of the accounts by the auditor, which may be classified thus :

I. Claims of creditors who were not parties to the original or amended bills, and who then filed their claims for the first time.

II. Claims of creditors, who, though parties to the original or amended bills, never filed any claims or offered any

proof of their being creditors prior to the decree, and then filed their claims for the first time.

III. Claims of creditors who were parties to the original or amended bills, and filed claims before the decree, upon which they have since recovered judgments against the administrator of the deceased debtor, and then presented their claims in the shape of judgments.

IV. *The suspended claim of Sarah Ann Truitt:* On this claim, also, there was a judgment by confession in the Superior Court of Baltimore City, March 1st, 1855, for $4,368, with interest from the 1st of March, 1855, and costs. This judgment was filed on the 23d of June, 1858. In other respects this claim stands upon the proofs taken before the decree.

On the 5th of November, 1858, an order was passed by agreement referring the papers in the cause to the auditor, to state the accounts between the parties from the proceedings and proofs in the cause, with power to take such other proofs as may be adduced before him. Most of the above claims, with the proof supporting them, had been filed previous to the passage of this order. The only claims and proofs subsequently filed are the affidavit and judgment in support of the claim of Vickery, the judgment in favor of Needles, and the claim of Golder. Such was the position of the case when the special auditor stated the accounts and made his report on the 25th of May, 1859.

Account A merely ascertains the amount for distribution, deducting from the proceeds of sale the commissions, costs and expenses ; account B applies this balance to the payment of Truitt's allowed claim on the $1,100 note, and the entire residue is allotted to the defendant, Goldsmith. Account C stated under instructions, distributes the balance ascertained by account A, in part payment of the claims of the several creditors above referred to. In his report the auditor recommends the ratification of accounts A and B,

McDowell et al. *vs.* Goldsmith.

and the rejection of account C. He rejects Truitt's suspended claim on the $2,800 note, because, he says, since the decree *evidence has been furnished* that letters of administration on Osborne's estate were granted before this note matured, and, therefore, limitations bars the claim. The auditor further says, that so far as the original complainants are concerned, the judgments only present in another form the claims already adjudicated, when the judgments were obtained ; and that the dismissal of the bill absolutely as to these creditors is a sufficient reason for rejecting their claims ; and further, that all the judgment claims, whether of creditors named in the decree or of those who have come in since the notice, are barred by limitations, if that defence can prevail against a judgment confessed by the administrator of Osborne.

The creditors, to whom the fund was distributed by account C, filed exceptions to the auditor's report and account B, because not in conformity to account C, which, they say, is the proper statement of the account, and on the 6th of February, 1861, an order was passed setting the cause down for hearing on the 18th of that month. On the 20th of March, 1861, the defendant filed exceptions to account C for the several reasons stated in the auditor's report, and more especially to the claim of Truitt on the $2,800 note, "for that *the same is now shown to be barred by limitations ;*" and to the claims of McDowell & Gable and others, named, and to each of them, "for that the same have been already adjudicated upon and disallowed, and the claimants dismissed from the cause by the decrees of the Court of Chancery and the Court of Appeals ; and, moreover, if proper to be litigated, are, and each of them is not proved, and if proved are and each of them *is barred by limitations ;*" and to the claims of Needles and others, and to each of them, "for that they are not, nor is either of them, proved, and if proved are and each of them *is barred by limitations.*" And on the

21st of March, 1861, he also filed an exception to the proofs offered in support of Truitt's claim on the $2,800 note, "because the same is not relevant to the averments in the original or supplemental bill, and because the same does not tend to establish any debt due by said Osborne at the date of the last of the series of conveyances from her to the defendant, or at the time of filing the original bill in this cause."

The Court, KREBS, J., adopted the views of the auditor, and on the 31st of May, 1861, passed an order overruling the exceptions to account B, and sustaining these to account C, and finally ratifying accounts A and B. From this order, the creditors whose claims were filed and thus rejected, appealed.

The cause was argued before BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*S. Teackle Wallis* and *O. Miller* for the appellants.

As to Truitt's claim on the $2,800 note. In reference to this it will be contended:

1st. That being the payee and holder of this note at the time the original bill was filed, she was a *creditor* by reason thereof, and competent to file a bill thereon to vacate the deed of February, 1844, *for fraud*, even though the note had not then matured, and consequently the filing of such bills by her prevented the running of the statute of limitations against this claim. A subsequent creditor may file a bill to vacate a deed for actual fraud in fact, and Truitt became a creditor for this purpose, and Osborne a debtor from the date of the execution of the note. It is clear that if a conveyance be not made *bona fide*, but colorably, with actual intent to defraud any existing creditor or creditors, it may be avoided by subsequent creditors; in other words, evidence of collusion as against existing creditors is sufficient evidence of fraud against subsequent creditors.

*Brinton vs. Hook,* 3 *Md. Ch. Dec.,* 477. *Sexton vs. Wheaton,* 8 *Wheat.,* 229. 1 *Story's Eq., sec.* 356. 1 *Amer. Lead. Cases,* 40, *(Ed. of* 1857,) *and cases cited in notes* 1, 3, *especially* 3 *Wend.,* 411, *and* 19 *Pick.,* 231. 1 *Amer. Lead. Cases,* 42, *(Ed. of* 1857.) *Waters vs. Dashiell,* 1 *Md. Rep.,* 470. *Williams vs. Banks,* 11 *Md. Rep.,* 198. *Brown et al. vs. Bank of Miss.,* 31 *Miss. Rep.,* 454.

2nd. But assuming that a subsequent creditor had no right to file a bill, and can only come in after the deed is vacated at the suit of antecedent creditors, still, limitations it is submitted does not bar this claim. It was filed December 30th, 1850. Osborne, the debtor, left the State, and died out of the State before the maturity of the note, and before the bill was filed. She could not therefore have been sued in Maryland on this claim, and there is no proof in the record that letters of administration were ever taken out upon her estate here prior to December 30th, 1850. Under such circumstances limitations never commenced to run against this claim before it was filed. *Act of* 1715, *ch.* 23, *sec.* 4. *Act of* 1765, *ch.* 12, *secs.* 2, 3. *Code, Art.* 57, *sec.* 4. *Fishwick vs. Sewell,* 4 *H. & J.,* 393. *Haslett vs. Glenn,* 7 *H. & J.,* 17. *Hysinger vs. Baltzells,* 3 *G. & J.,* 158.

3rd. Again, if no bill could have been filed on this claim, and it could only have been presented after the decree had vacated the deed, at the suit of antecedent creditors, then it is clear that the plea of limitations set up in the *answer* had no reference or applicability to this claim. This being so, limitations has never been pleaded to it by any one. The mere assertion in the exceptions to account C, that the claim "is *now shown* to be barred by limitations," is not a plea of the statute, such as is required even by the loosest rules of chancery pleading. Limitations must always be pleaded, both at law and in *equity,* and a defendant cannot avail himself of this defence, because the pro-

ceedings of the plaintiff *show a case* to which limitations might be applied.   *Chambers vs. Chalmers,* 4 *G. & J.*, 420. *Strike's case,* 1 *Bland*, 57.   *Hepburn's case,* 3 *Bland,* 95. *Dorsey vs. Dorsey,* 6 *G. & J.*, 12.   *Lansdale vs. Ghequire,* 4 *H. & J.*, 259.

II. As to the claims of creditors not parties to the original or amended bills, and who filed their claims under the decree and notice to creditors.

It will be insisted on behalf of these claimants, and all others who have recovered similar *judgments* against the administrator, that the plea of limitations filed by the fraudulent grantee in this case is no bar to such claims, for—

1st. The fraudulent deed passed no title as against the defrauded creditors.   The title and property still remained in the grantor for the benefit of her creditors.   Such deeds are void *ab initio,* not to be recognized for any lawful purpose, not even as security for advances and improvements made on the property by the grantee.   As the title still remains in the grantor for the benefit of his creditors, notwithstanding the deed, he can convey it by another deed, or make any other disposition of it for their benefit he may see fit.   *Waters vs. Dashiell,* 1 *Md. Rep.*, 470. *Strike vs. McDonald,* 2 *H. & G.*, 261.   *Bridges and Woods vs. Hindes,* 16 *Md. Rep.*, 101.

The title to this property, this equity of redemption, remained in Osborne during her life, and upon her death so much of it as was real estate devolved upon her heirs, and so much of it as was personalty upon her personal representative.   A large portion of the property was personal estate, and vested in her administrator whenever letters were granted, by relation, from the time of her death.   *Winchester vs. Union Bank,* 2 *G. & J.*, 79.

Now to claims against the personal estate of an intestate, the administrator alone can plead limitations; it cannot be

done by legatees or devisees. The administration of the estate in this respect is referred entirely to his honesty and discretion, which is absolute and uncontrolable in the matter. *Spencer vs. Spencer*, 4 *Md. Ch. Dec.*, 465. *Owens vs. Collinson*, 6 *G. & J.*, 4.

An acknowledgment by an administrator is sufficient to remove the bar of the statute as to a claim on a simple contract debt against his intestate. *Forbes vs. Perine's Adm'r.*, 1 *H. & J.*, 109. *Chapman vs. Dixon*, 4 *H. & J.*, 527. *Kent's Adm'r vs. Wilkinson*, 5 *G. & J.*, 497.

The statute does not extinguish the debt, but only bars the remedy. *Vesey vs. Bassett*, 7 *H. &.J.*, 461. And the administrator in whom alone rests the discretion to plead the statute or not, having waived the plea, and confessed judgments on these claims, such judgments bind all assets which may or ought to have come into his hands. So far, therefore, as the fund in question is the proceeds of personal property, it is confidently submitted, that it is liable for the payment of all judgments so confessed and filed in the case.

2nd. The decision of this Court on the former appeal does not go to the extent claimed, and has not the effect sought to be given to it by the appellee. The great question argued on the former appeal was, whether, under *any* circumstances or for *any* purpose, a fraudulent grantee could avail himself of this defence as against defrauded creditors? The Court decided that he could do so in reference to the claims as then presented.

III. As to the claims of creditors who, though parties to the original or amended bills, never filed any claims or offered any proof of their being creditors prior to the decree, but came in and filed their claims under the decree and notice.

As to these it is insisted:

1st. That the fact that the decree dismissed the bills as

to these parties can have no effect upon their claims thus presented. The bill simply alleges that Osborne was indebted to these parties. It does not set forth how she was so indebted, whether upon bill, bond, note or open account, nor were any claims or accounts showing such indebtedness filed with the bills, or any proof of any claim whatever, or of their being creditors in any shape, offered prior to the decree. The dismissal of the bill as to them was simply equivalent to a judgment of *non pros.* at law.

A decree dismissing a bill is a bar even to a new bill only where the Court has determined that the plaintiff had no title to the relief sought by his bill, and, therefore, an order dismissing a bill for want of prosecution is not a bar to another bill.

It is not an absolute dismission so as to bar a new suit, unless it be an absolute decision on the *same point* or *matter ;* where the point or matter decided is not the same, or where *new rights* are acquired *after the decree,* a party may file a new bill even though his former bill has been dismissed *on the merits.* So *a fortiori* could these parties file claims such as these under this decree. *Story's Eq. Pl.*, sec. 793. *Sawyer vs. Bletsoe,* 2 *Vernon,* 328. *Same case,* 1 *Vernon,* 244. *Neafie vs. Neafie, et al.* 7 *Johns. Ch. Rep.,* 1. *Perine vs. Dunn,* 4 *Johns. Ch. Rep.,* 142. *Mitford's Ch. Pl.,* 279, 280. *Pickford vs. Hunter,* 5 *Simons,* 122. *Bridges vs. Sumner,* 1 *Pick.,* 371. *Estil vs. Taul,* 2 *Yerger,* 470. *Dixon vs. Sinclear,* 4 *Vt. Rep.,* 361. *New Eng. Bank vs. Lewis,* 8 *Pick.,* 117. *Barr vs. Jackson,* 20 *Eng. Ch. Rep.,* 585, (1 *Y. & Col.) Scudemore vs. White,* 1 *Vern.* 456.

The judgments claim therefore of McDowell and Gable, Hamilton Easter and Company, and Canfield and Brother, stand on the same footing with regard to the plea of limitations as the other judgment claims.

3rd. The claim of Lankford is different. It is a judgment against Osborne *in her life time,* recovered on the 17th of

February, 1845, in the State of New York, in the Court of Common Pleas for the city and county of New York, and was filed in this case on the 22nd of March, 1845. Now to this claim limitations of three years is not applicable, and twelve years had not elapsed when the claim was filed. A judgment rendered in another State is not subject to plea of limitations except twelve years. *Bank of U. S. vs. Merchants' Bank*, 7 *Gill*, 426. *Mills vs. Duryee*, 7 *Cranch*, 481. *Hampton vs. McConnell*, 3 *Wheat.*, 234. *Andrews vs. Montgomery*, 19 *Johns.*, 162. *Hughes vs. Davis*, 8 *Md. Rep.*, 271. *Act of* 1715, *ch.* 23. *Code*, *Art.* 57, *secs.* 1, 3. *Duvall vs. Fearson*, 18 *Md. Rep.*, 502.

IV. As to the claims of creditors who were parties to the original or amended bills, and filed claims before the decree, upon which they have since recovered judgments against the administrator, which judgments they have filed under the decree and notice to creditors.

It is submitted that the authorities already cited, as to the effect of a decree dismissing a bill, and of judgments against the administrator, apply also to these claims, and exempt them from the operation of the plea set up by the defendant.

The counsel for the appellants then further argued as an independent proposition, to affect as far as may be, all the defences of limitations taken, that it is not competent for the appellee, a fraudulent grantee, to plead limitations, after decree, to claims filed under the decree, notwithstanding that he may so plead in advance of, and to prevent a decree. The deed being avoided, for fraud found, the grantee has no standing in Court for any such purpose, the fund being then, like any other trust fund appropriated to creditors, with which the fraudulent grantee has no connection, so far as they are concerned, except as a trustee *ex maleficio*, and without any equities of his own. *Bridges vs. Hindes*, 16 *Md. Rep.*, 101. *Waters vs. Dashiell*, 1 *Md.*

*Rep.*, 470. *Strike vs. McDonald*, 2 *H. & G.*, 261. *Engle-hart vs. Blanjot*, 2 *Wharton*, 245.

*Thomas S. Alexander* and *George H. Williams* for the appellee.

I. The claim of Sarah Ann Truitt on the note for $2,800, dated 21st of October, 1844, at twelve months, was expressly reserved by the original decree for further directions, and so far as adjudication goes, stands unaffected by the decree. But the Chancellor in his opinion says: "The evidence shows that Elizabeth Osborne removed to New York in November, 1844, before that note matured, and there are no facts in the cause from which it can be fairly inferred that she could ever have been sued in Maryland on that note. Indeed, if it be true that she died in April, 1845, and there has been no administration on her estate, limitations could never have commenced to run against the claim." It is now shown—and the auditor so reports— that letters of administration on the estate of Elizabeth Osborne were granted to T. Parkin Scott before the note in question had matured, that is, before the 24th of October, 1845. The claim was filed as of the 1st of April, 1851; it is therefore clear that the claim is barred by limitations, to the benefit of which opinion the appellee has been declared to be entitled. But again, it will be found by reference to the testimony of William H. Collins, that Elizabeth Osborne was in the city of Baltimore in the month of March, 1845, so that limitations had commenced in her favor in her life time.

II. The claim of John Needles, next in order in account, rests: 1st. On an open account, which is not proved, and if proved would clearly be barred by limitations. 2nd. On a judgment confessed by Mr. Scott, as administrator, to bind assets. The auditor has very correctly said that a judgment, as against an administrator, is not evidence

against the heir, either to establish the original indebtedness or to remove the bar of limitations. *Duvall vs. Green,* 4 *H. & J.*, 270. *Byerly vs. Stayley*, 5 *G. & J.*, 452. *Collins vs. Owens*, 6 *G. & J.*, 4. And *a fortiori* such judgment cannot be evidence against the grantee of the supposed debtor. It will be observed that the judgment relied on was confessed *pendente lite* and nearly ten years after the commencement of this suit, (vide Act 1835, ch. 38, sec. 2.)

But again, the fact of the supposed recovery is not proved, a short copy being insufficient for that purpose.

Those obligations would be equally applicable against the claim of Archibald Golder, but that claim appears to have been excluded by the auditor.

III. T. B. Sexton & Co., R. McEldowney & Co., and S. Cariss, come in under the decree, and, as evidence of their claims, rest on short copies of judgments confessed by Mr. Scott, as administrator. Those claims are therefore liable to the objections already taken to the claim of John Needles.

IV. McDowell & Gable were parties complainants to the original bill, and against them the bill was dismissed absolutely, as well by the decree of the Chancellor as by the decree of affirmance.

There is, therefore, *res adjudicata* as against them, and they cannot reopen the obligation by coming in under the decree. *Lent vs. O'Hara*, 7 *G. & J.*, 212. *Dorsey vs. Hammond*, 1 *Bl.*, 463. *U. S. Ins. Co. vs. Ellicott*, 7 *Gill*, 307. *Albert & Wife vs. Winn & Ross*, 5 *Md. Rep.*, 66. *Clabaugh vs. Byerly*, 7 *Gill*, 354. Act of 1835, ch. 380, sec. 2. *Jones vs. Nixon*, 1 *Younge & Collier*, 359, cited in 2 *Dl. Ch. Pr.*, m. *p.* 176. *Piggott vs. Horton*, 14 *Ves.*, 232. *Ellicott vs. Nicholls*, 7 *Gill*, 85.

2. There is no proof of the claim other than the short copy of a judgment confessed in favor of the claimants by

HARVARD LAW SCHOOL LIBRARY

Mr. Scott, as administrator, as before stated. This short copy is not evidence of the recovery, and the judgment, if proved, would not establish the claim as against the appellee. *Hammond vs. Hammond*, 2 *Bland.*, 362. *Boyd & Hance vs. Harris*, 1 *Md. Ch. Dec.*, 469. *Brooks vs. Dent*, 4 *Md. Ch. Dec.*, 473. *Stewart vs. Warfield*, 7 *G. & J.*, 190. *Dorsey vs. Smithson*, 6 *H. & J.*, 61. *Putnam vs. Bates*, 3 *Eng. Cond. Ch. Rep.*, 355. *Shewen vs. Vanderhorst*, 4 *Id.*, 460.

3. The claimants are supposed to reappear under the decree: the limitations would run up to the filing of the short copy.

V. The objections stated to the claim of McDowell & Gable are equally applicable to the claims of Walter Crook, Jr., Canfield Bros., B. & W. H. Harrison, H. Easter & Co., W. J. Hyde et al., and Anna Maria Vickery.

VI. The claim of Wiley Langford is liable to the objection that he was a party to the original bill, and that the bill was absolutely dismissed as against him. The evidence of his claim now relied on is a transcript of a recovery had against Elizabeth Osborne in her life time, in the State of New York, as far back as 17th of February, 1845. This judgment cannot be read as evidence against the appellee, who claims under a prior conveyance, and if admissible against him at this time, it was equally available against him at the date of the original decree.

Cochran, J., delivered the opinion of this Court.

These appellants, with the exception of Needles, Cariss, S. B. Sexton & Co., and R. Mc. Eldowney, were all parties to the original and amended bill, and as to them, with the exception of Truitt, the bill was absolutely dismissed by the final decree. The appellee insisted that this dis-

missal bars their right to participate in this distribution, and in reviewing their exceptions to the accounts, finally ratified by the Court below, it will be necessary to ascertain how far the decree dismissing the bill affected their standing as creditors, entitled to payment out of this fund.

It will be seen by referring to the record that these exceptants filed the original and amended bill for relief as creditors of Osborne; that in the course of the proceedings a large mass of testimony was taken for the purpose of sustaining the allegations of the bill and establishing their claims as creditors; that the case was heard upon the bill, exhibits, answer and testimony, and a final decree passed by the Chancellor dismissing the bill, as to them, absolutely, which decree, on their appeal, was affirmed by the Court of Appeals. This brief review of the original proceedings is sufficient to show that the case was submitted to the Chancellor on its merits, and that the rights and claims of these appellants were finally adjudicated by his decree. The opinion filed by him, in conformity with which the decree was drawn, shows, beyond question, that these claims were considered and held to be barred by the appellee's defence on the statute of limitations. Nor is the decree itself less conclusive on this point, for it vacates the deed of 1844 from Osborne to the appellee, not for the benefit of all the parties then before the Court, and dealt with by the decree, but only in favor of Truitt and such other of the creditors of Osborne as should thereafter come in under the decree and establish their claims. These exceptants, therefore, cannot be heard to say that the bill was dismissed as to them for want of prosecution; they were before the Court, and heard upon proof offered to sustain the allegations of their bill, and they took and prosecuted an appeal from the decree passed thereupon. If the Chancellor intended to leave their rights and claims unaffected by his decree, he should have dismissed the bill

without prejudice ; and if the case was such as to authorize such a dismissal it was error to dismiss the bill absolutely. *Griffith vs. Fred. Co. Bank*, 6 *G.* & *J.*, 424. STORY, in his *Equity Pleadings, section* 793, says, that "a decree or order dismissing a former bill for the same matter may be pleaded in bar to a new bill, if the dismission was upon the hearing, and was not in terms directed to be without prejudice." The condition of these claims is not changed for any of the purposes of this case by the administrator's confessions of judgments. He had no power to waive the appellee's defence of limitations, nor could he by any such waiver establish the claims of these exceptants against this fund. This is not a case of assets that may be administered by an administrator, but of a fund in chancery, to be disposed of under a decree that the administrator must respect, and to which, so far as these exceptants are concerned, the appellee is entitled. He, as grantee in the deed from Osborne, was held by the Chancellor and the Court of Appeals entitled to the defence of limitations to the claims of the creditors assailing the deed, and it is not to be supposed that the administrator could deprive him of that defence by any admission or act whatever. *Duvall vs. Green*, 4 *H.* & *J.*, 270. *Byerly vs. Staley*, 5 *G.* & *J.*, 432. *Collinson vs. Owens*, 6 *G.* & *J.*, 4. *Warfield vs. Welch*, 3 *G.* & *J.*, 259.

The claim of Truitt on the note for $2,800 stands on a different, though not more substantial footing. The deed vacated by the decree was executed in February, 1844 ; the original bill, in which the complainants allege the grantor's indebtedness to them when she executed the deed, as their cause of action and ground of their rights to relief, was filed in Agust, 1845, and this note, made in October, 1844, did not mature until October, 1845. It thus appears that the note was given for a debt, not within the description of the bill, but for one contracted after the deed was

executed, and upon which the right of action did not accrue for some two months after the bill was filed. The claims were, therefore, not within the class of credits alleged, and Truitt, as a complainant, for that reason, had no standing upon it at the time the bill was filed. She undoubtedly had, in such a case as this, the right, at the maturity of the note, if not before, to make herself a party with respect to it; but to bring it within the equity of the bill, already filed, it was necessary to present the note and assert it as a claim in the cause. That, however, appears not to have been done until December, 1850, when the note was first filed with the Commissioner, and subsequently returned by him, with the testimony taken. The defence of limitations was made and relied on in the answer to the original and amended bill, and this claim, in our opinion, was barred by that defence, as it now clearly appears that limitations began to run in 1845, a period of more than three years before the claim was presented or asserted by any proceeding in the case. The claim was reserved by the decree for further "directions," and we find, by referring to the opinion of the Chancellor, a statement of the reasons why it was suspended for further consideration; he says "The evidence shows that Osborne removed to New York in November, 1844, before this note matured, and there are no facts in the cause from which it can be fairly inferred that she could ever have been sued in Maryland upon it. Indeed, if it be true that she died in April, 1845, and there had been no administration on her estate, limitations could never have commenced to run against this claim." He had before decided upon the authority of *Hall vs. Creswell,* 12 *G. & J.,* 36, that, while other parties might come into the cause as co-complainants with those named in the original bill, yet limitations would run against their claims until they did so come in and file them. Truitt was a complainant

in the original bill, but not so in regard to this claim; she had no standing upon it at the time that bill was filed, and, as we have said, it was necessary to assert it by some affirmative proceeding in the case to bring it within the equities of the bill.   This appears to have been the Chancellor's view of her standing in regard to it, and in that view we concur.   The questions whether limitations began to run, so as to constitute a defence to the claim when it was first asserted in the case, must, therefore, be determined by the proof now appearing in the record.   It is now presented in the form of a judgment, confessed by T. P. Scott, as administrator of Osborne, and we find, by a duly authenticated certificate of the Register of Wills for Baltimore city, filed after the hearing before the Chancellor, that letters of administration on Osborne's estate were granted to him on the 27th of August, 1845. It thus appears from the present state of the proof that limitations began to run from the day the note matured, and that the claims upon it were barred at the time of filing the note with the Commissioner.   The confession of the judgment by the administrator does not affect the nature of the claim, and for reasons already stated does not remove the bar of the statute.   The same may be said of the remaining claims of Needles, Cariss, S. B. Sexton & Co., and R. McEldowney & Co.   These were filed in the case under the notice required by the decree, and all of them rest on judgments confessed by the administrator more than ten years after the death of Osborne, the debtor.   The appellee excepted to them on the ground that they were not proved, and if proved, that they are barred by limitations.   As against the appellee, these judgments are not to be taken as evidence establishing these claims ; like those obtained or confessed in favor of the appellants, they are wholly inadmissible for that purpose.   Without, however, noticing the questions whether

they are otherwise proved, it will be sufficient for present purposes to determine whether the appellee's exception to them on the ground of limitations is sufficient to entitle him to the benefit of that defence.   It was settled in *Banks vs. Williams*, 11 *Md. Rep.*, 198, that limitations is a defence that may be taken by way of exception in such cases as this.   The only question here is in regard to the sufficiency of the exception.   In substance it presents limitations as an objection to these claims, and we think it must be regarded as stating a defence upon which the appellee relies.   The substance of the objection or defence must govern in determining its sufficiency rather than the form in which the objection or defence is presented.   In our opinion the exception to these claims on the ground of limitations was sufficient, and we shall, for the reasons herein stated, affirm the order of the Court below, finally ratifying accounts of A and B, and sustaining the exceptions taken to account C, with costs to the appellee, and remand the cause.

( Decided March 14th, 1866.)