REDWOOD F. WARNER, WILLIAM MISKEY and
WILLIAM O. B. MERRILL, trading as WAR-
NER, MISKEY & MERRILL, and others *vs.* WIL-
LIAM T. DOVE and ANN W. DOVE, his Wife.

*Equity Evidence—Exemption of the property of the
Wife from liability for the Husband's debts—
Voluntary gifts or settlements.*

On a bill filed against a husband and wife by some of his creditors, seek-
ing to vacate certain deeds of real estate which had been conveyed to
the wife by third parties, and to subject the same to the payment of
their claims, mere short copies of judgments confessed by the husband,
and filed with the bill as exhibits, but not proven under the commission,
are not sufficient proof of the husband's indebtedness as against the
answer of the wife, silent on the subject.

A married woman may, with funds received from time to time from her
husband, while in prosperous circumstances, and possessed of ample
means to pay all his debts, purchase and have conveyed to her, in her
own name, real estate, and the same cannot be subjected to the payment
of the debts of the husband which existed at the date of such purchase
and conveyance.

Where a husband, who is possessed of personal property only, takes a small
sum from the profits of an extensive and lucrative business, and buys
land which he causes to be conveyed to his wife, it is a very different
thing, in view of the rule as to the sufficiency of his remaining means
to pay debts, from a direct conveyance or settlement of real estate
which he possessed at the time he contracted his debts. The *bona fides*
of such a transaction, and the sufficiency of his remaining means to
satisfy existing creditors, must be judged by the character and nature of
the property and means he then had.

APPEAL from the Circuit Court for Montgomery County,
in Equity.

The bill of complaint in this case was a creditors' bill filed
by the appellants against the appellees; its object was to
annul and vacate three deeds which conveyed certain real

estate to the appellee, Ann, and to subject the same to the payment of their claims. The Circuit Court passed a decree dismissing the bill. From this decree the complainants appealed.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ROBINSON, J.

*H. W. Talbott* and *Alex. H. Hobbs,* for the appellants.

The appellees must show *affirmatively* that the purchase money, mentioned in the several deeds to Mrs. Dove, was her money, not derived from her husband by gift or otherwise, but acquired by her from a different source.

At common law, the personal property of the wife, on the marriage being consummated, became the *absolute* property of the husband, and he could no more dispose of property thus acquired, in prejudice of creditors, than he could the property of which he was the *original* owner.

The several Acts of Assembly, made to protect the property of married women, do not relieve the case of the difficulty. These Acts are in derogation of the common law, are to be strictly construed, and any one seeking protection under them must bring him or herself within their terms—*must show property.*

The statutes merely protect the wife's property from the debts of the husband, but in no other respect do they impair his marital rights. *Schindel vs. Schindel,* 12 *Md.,* 313.

In this case the appellees were charged with having perpetrated a fraud upon the creditors of Wm. T. Dove, and evidence was offered to prove the charge; yet, with this grave charge against them, they *persistently* refuse to utter one word explanatory of the transaction. Wm. T. Dove professes not to know where his wife obtained the money from, (over $4,000;) he never inquired about the matter, but blindly took it, purchased the property and asked no questions. *This is incredible.*

The appellees having had the most violent suspicion cast upon them by the allegations of the bill and the testimony adduced, the law, as well as reason and common sense, will convict them *by the evidence of their own silence;* they have acquiesced in the truthfulness of the charge made against them. *Schafferman vs. O'Brien,* 28 *Md.,* 575, 576, 577. The wife must show property in herself. 27 *Md.,* 437, *&c.*

But suppose that Dove did, from time to time, give his wife money, that could in no sense uphold these deeds. It has been decided that where a husband contracts to give and does actually give his wife her own earnings, and the earnings of her own servants, it is, nevertheless, *his property* in a contest between his creditors and himself. *McLemon vs. Nicholls,* 37 *Alabama,* 675; *Pinkston vs. McLemon,* 31 *Alabama,* 308.

It is to be observed that in all the purchases Wm. T. Dove conducted the negotiations, caused the deeds to be made to his wife and paid the purchase money. The vendors knew no one else in the matter; and, in the case of the purchase from Haight, the husband admitted that the farm was intended as a *gift* to his wife.

*George Peter* and *William H. Tuck,* for the appellees.

This is not a case of a voluntary conveyance from the husband to the wife. The deeds in question are from strangers to her. In cases of voluntary conveyances, the deeds are *prima facie* void, as against prior creditors, and the party seeking to hold under such deeds must refute fraud. Such was the case in 5 *Gill,* 560; but, in this case, the deeds are from entire strangers, and being made evidence by the complainants filing them as exhibits with their bill, can only be vacated by such proof of actual fraud as would leave no room for doubt. *Glenn vs. Grover & McColm,* 3 *Md.,* 225, *&c.; Farringer vs. Ramsay,* 2 *Md.,* 365.

The first charge then which it is incumbent upon the complainants to establish by proof, is, that the money with which

the lands were purchased was the proper funds of the husband. To support this charge, they have examined quite a number of witnesses, whose testimony was designed to establish two facts, but satisfactorily proves neither: 1st. That Mrs. Dove was in such indigent circumstances at the time of her marriage that the money could not have been her's; and, 2d. That William T. Dove used such language at the time of the purchases as indicated that he was acting for himself, and not as the agent of his wife. The deeds are *prima facie* evidence of the verity of their contents, and when they are supported by the positive answer of the defendants, the testimony to set them aside ought to be so clear and explicit as to leave scarce a doubt on the subject. *Farringer vs. Ramsay,* 2 *Md.,* 365; *Boyd vs. Dunlap,* 1 *John., Ch. Rep.,* 482; *Glenn vs. Grover, &c.,* 3 *Md.,* 226; *Mayfield, et al. vs. Kilgour, et al.,* 31 *Md.,* 244, 245.

No testimony which does not trace the fund directly to Mr. Dove, is evidence on this point; and no statements made by him, out of the presence and hearing of Mrs. Dove, are binding on her, or can be used as evidence against her, unless her subsequent assent thereto can be established. In this case, Mrs. Dove occupies the position of a third party. It is the policy of the laws of the State to protect the property of married women, which would be entirely defeated by permitting *ex parte* statements of the husband to affect it, and place it entirely in his power to subject it to the payment of his own debts whenever he chose to do so. *Schindel vs. Schindel,* 12 *Md.,* 168.

There is no proof whatever of actual fraud on the part of Mr. Dove. And, although the slightest facts and circumstances are admissible in cases of fraud, yet all the circumstances combined must be so strong as to satisfy the mind of the fact sought to be established. *Waters vs. Dashiel,* 1 *Md.,* 474; *Davis vs. Calvert, et al.,* 5 *G. & J.,* 269.

To set aside the deeds in question, even if the Court should come to the conclusion that the money paid for the lands

belonged to the husband, it must be further satisfied that they were made with fraudulent intent, and that the deeds, at the time of their execution, were intended to be instruments of that fraud. The evidence shows that William T. Dove was in prosperous circumstances at the time of the first purchase. If such was the fact, he had a right to make a suitable provision for his family. *Williams vs. Banks,* 11 *Md.,* 198; *Ellinger, et al. vs. Cowl and wife,* 17 *Md.,* 361.

MILLER, J., delivered the opinion of the Court.

The complainants, alleging themselves to be creditors of William T. Dove, filed a bill in equity to vacate and annul three deeds by which certain land in Montgomery County, in this State, was conveyed to his wife Ann W. Dove, and to subject the same to the payment of their claims. The *first* deed is from Haight and wife, dated May 12th, 1862, conveying about fifty acres for the consideration of $1,800; the *second* from Jackson and wife, dated October 17th, 1862, conveying about sixty-two acres for the consideration of $1,375, and the *third* from Knock and wife, dated September 4th, 1864, conveying about fifty-eight acres for the consideration of $900. The bill charges that these several pieces of land were purchased and paid for with the money of the husband and not of the wife, and that he falsely and fraudulently, and with intent to delay, hinder, cheat and defraud the complainants and his other creditors procured the same to be conveyed by the several vendors to his wife by the deeds above mentioned. There can be no doubt of the right of these creditors to the remedy they seek, provided the allegations of their bill are sustained by sufficient proof. The defendants, Dove and wife, answered separately, but their answers were not read in evidence, and we can take no further notice of them than to see that they each deny and put in issue the charge that the property was purchased with the husband's money, and also the charge of fraud, and that the answer of the wife neither admits nor denies the indebtedness

of the husband to the complainants as charged in the bill. There are several grounds on which the decree below dismissing the bill must be sustained.

1st. There is no proof as against Mrs. Dove, the grantee in the deeds, of the indebtedness of her husband at the time these conveyances were made. The answer of the husband is not evidence against her, and the judgments confessed by the husband in 1867 on the claims of the complainants are not proved. Mere short copies of these judgments were filed as exhibits with the bill but were not proven under the commission, and that certainly is not sufficient proof of the husband's indebtedness as against the answer of the wife silent on the subject. *Eyler & Matthews vs. Crabbs,* 2 *Md.,* 154. Nor would the voluntary confession by the husband of judgments on these claims in 1867, long after these deeds were executed, prevent the wife, the grantee therein, from denying the existence or validity of the claims, or relying upon the fact that they were barred by limitations before the judgments were confessed. *Niller vs. Johnson,* 27 *Md.,* 6 ; *McDowell vs. Goldsmith,* 24 *Md.,* 230.

2d. But apart from technical objections of this character, the decree may well stand upon broader and firmer grounds. As to the third deed, of the 4th of September, 1864, the proof is clear that Mrs. Dove borrowed the money from Mr. Lyddane, to pay for the land thereby conveyed, which she applied to that purpose; and the testimony shows beyond question that no money that ever belonged to her husband was in any way directly or indirectly expended in this purchase. There is therefore no ground on which that deed can be assailed. With respect to the two other deeds of May and October, 1862, the most favorable point from which they can be assailed by the appellants, is to consider them as mere voluntary settlements by the husband on his wife, he having furnished the whole purchase money or given it to her at some time prior to their respective dates. Viewed in this light and assuming the husband's indebtedness charged in the

bill to be proved, how stands the case? By the law of this State, as it now is and was at the time of these transactions, (and there is no proof in this record that the law of the District of Columbia is different,) a husband has the right and can make a valid gift of money or other property to his wife, provided it be not " in prejudice of the rights of his *subsisting creditors.*" So far as the record discloses, the only debt he owed at the date of either of these two deeds, was that due to the complainants, Warner, Miskey & Merrill, which consisted of a draft for $867.$\frac{83}{100}$, due in September, 1862, and on which $201.$\frac{19}{100}$, was paid in December following, and an open account of $399.$\frac{64}{100}$. The debt to Riggs & Co., was not contracted until the 30th of March, 1863. Now it is very clearly shown by the testimony that for many years prior to this time and up to June, 1863, when he retired, Mr. Dove had been extensively engaged in large and profitable business operations of various kinds in the city of Washington; that he had large dealings with merchants in that city and in Baltimore, New York and Philadelphia, including this firm of Warner, Miskey & Merrill, with whom he had dealt extensively from 1858 or 1859; that when he quit business he was regarded as perfectly solvent, and his credit was good for any amount, at least for $50,000; that he left in the hands of a collector and former clerk, book-accounts and notes, all of which, others as well as himself, supposed to be good and available to an amount exceeding $13,000, with directions to collect the same and first pay therefrom all his debts; that he then thought himself quite easy in his circumstances, with ample means to pay every debt he owed and leave a surplus, the interest of which would support him; that these claims have not since been collected chiefly by reason of the inattention of his agent, and also because during the war many of his debtors left the city and could not be found until the claims against them were barred by limitations; that during the time he was thus engaged in business he and his family lived comfortably, and he from time to

time gave his wife money, from which a prudent woman, as she was proved to have been, could have saved more than enough to pay the consideration money of these two deeds. It does not appear that he ever owned any real estate and it is very evident this firm did not trust him with reference to his ownership of any such property, but solely on account of the business in which he was engaged, his personal credit and the personal assets or means they supposed he might have accumulated or was making in his business operations. If during the time he was thus engaged in successful business and prior to the purchase of these pieces of land, he was in the habit of giving money to his wife, which she saved and subsequently applied in this way, or if he gave it to her outright at the date of each of these deeds, we could not, on all the proof before us, say such gifts were in prejudice of the rights of existing creditors or infer therefrom an intention on his part, or a fraudulent collusion between himself and his wife, to cheat and defraud such creditors. So if we regard the transaction as a purely voluntary settlement on the wife and an investment of his money in this mode for her benefit, the proof in our opinion is quite sufficient to relieve it from the presumption of fraud arising in such cases where any pre-existing indebtedness is shown to exist, and to gratify the requirement established by the decisions of this Court under which deeds of that character can be sustained. The evidence in our judgment shows beyond reasonable doubt that the husband at the time of these gifts was in prosperous circumstances, unembarrassed and possessed of ample means consisting of the same kind of property that he had when the debt to this firm was contracted, to pay all the debts he then owed, and that the settlement was a reasonable one. He had remaining of such property and assets more than ten times the amount of this, the only pre-existing debt. It is to be observed, this is not a case where a party possessed of real estate and also of assets of this description conveys the former, which is unincumbered, visible, tangible and easily accessible to cre-

ditors, in settlement upon his wife and family and leaves his creditors to resort to the latter, where their remedy might be more precarious and difficult, and the property, at all events, less readily and conveniently accessible to their claims. A conveyance of that character would of necessity operate to hinder and delay creditors in the collection of their debts, and for that reason would be void though enough might be shown to remain for their eventual satisfaction, as was decided by the CHANCELLOR in *Bullett vs. Worthington,* 3 *Md. Ch. Dec.,* 99. Here personal assets, debts, book-accounts and notes due him were the only property the husband had.— Where one thus situated takes a small sum from the profits of an extensive and lucrative business, and buys land which he causes to be conveyed to his wife, it is a very different thing, in view of the rule as to the sufficiency of his remaining means to pay debts, from a direct conveyance or settlement of real estate which the party possessed at the time he contracted his debts. The *bona fides* of such a transaction and the sufficiency of his remaining means to satisfy existing creditors, must be judged by the character and nature of the property and means he then had, and so judging and applying the rule, we are well satisfied the proof in this case has placed the transactions complained of, if regarded simply as voluntary gifts or settlements, beyond the reach of successful attack.

*Decree affirmed.*

(Decided 2d February, 1871.)