ANNIN and others vs. ANNIN and wife.

1. An objection to a bill on the ground of multifariousness, must be taken advantage of by plea, demurrer, or answer, expressly for that purpose. It cannot avail the defendant on final hearing. By answering the matter of the bill, he has waived the objection.

2. A bill will be dismissed on the ground of misjoinder or multifariousness, at the hearing, only when the court finds itself embarrassed thereby, to such an extent as to prevent it from administering appropriate relief.

3. A creditor whose remedy at law has been exhausted, may file a bill in equity, for his own benefit—without making other creditors, standing in the same situation, parties—so far as respects property on which no creditor has obtained a lien by judgment or execution at law.

4. A bill will not be dismissed on account of the incongruousness and inaptness of the special prayers for relief. Even if the special prayers were such that no relief could be granted under them, the court, under the general prayer, may grant any appropriate relief, consistent with the case made by the bill.

5. A voluntary conveyance by a husband to his wife, is void as against creditors of the husband whose debts existed at the time of the conveyance.

6. That a creditor, whose debt existed when a voluntary conveyance was made by the debtor of his property, might have had his debt paid at any time for more than seven years after the conveyance, but did not demand it during all that time, nor until after the debtor had become embarrassed, is no ground of equitable estoppel against proceedings commenced by the creditor as soon as he was informed of the conveyance, to reach the debtor's property in the hands of the voluntary grantee.

7. That a voluntary grantee of her husband's property, has spent large sums of her own money in paying off mortgages upon it and improving it, does not entitle her to invoke the aid of the doctrine of estoppel against an antecedent creditor of her husband, who was kept in entire ignorance of the conveyance almost up to the very commencement of his proceedings to reach the property in the grantee's hands.

8. Even if, in such case, the creditor was chargeable with notice from the record of the deed, a general allegation by the grantee, of expenditure of her own money on the property, would not be sufficient. The amount she received from it must also appear.

9. Mere delay in prosecuting a claim for a debt against a voluntary grantee of the debtor, is no ground of equitable estoppel against an antecedent creditor, in seeking to reach the property in the hands of the grantee.

10. If a husband is indebted at the time of making a voluntary settlement upon his wife, it is presumed to be fraudulent in respect to debts then existing. Such debts cannot be affected by the settlement, and no circumstance will repel the presumption of fraud.

11. A voluntary conveyance by a debtor to his wife, of property, of which, or of the proceeds of it, he has been in constant enjoyment, has no claim to be regarded as a post-nuptial settlement.

On the 30th day of July, 1862, the defendant, Dr. Annin, was the owner in fee simple of two pieces of real estate in the city of Newark, one a dwelling-house and premises where he resided, in Market street, and the other a dwelling-house and lot in Camp street. He was then indebted to the complainants, as administrators of Sarah Annin, deceased, in the sum of $400, for money loaned by them to him, on interest, and for which they held his promissory note, payable, with interest, at the rate of six per cent. per annum, from its date, March 27th, 1861. He was also indebted to the complainant, Joseph W. Annin, in his own right, in the sum of $600,

for money loaned by the latter to him, on interest, and for which Joseph W. Annin held his promissory note, payable in one year from its date, October 11th, 1859, also with interest, at the rate of six per cent. per annum.

On the day first named, July 30th, 1862, he conveyed all of said land and premises in fee simple to his wife's brother, Staats O. Mead, for the consideration, as expressed in the deed, of $1 ; and Mr. Mead, by deed dated on the following day, conveyed the property in fee simple to defendant,. Eleanor T. Annin, the wife of Dr. Annin, for the same nominal consideration.

In October, 1866, the defendants conveyed part of the Camp street property to Bruen H. Camp, for the consideration of $4500 ; $2500 of which was paid in cash, and the remainder secured by bond and mortgage on the premises. In April, 1871, they sold and conveyed the Market street property to Thomas Jones, for $50,000 ; of which $15,000 was paid in cash, and the rest, $35,000, secured by mortgage on the premises.

The defendants allege that Mrs. Annin applied the cash received on the sale of the Camp street property towards the payment of a mortgage of $7500, then on the Market street property.

It is admitted that Mrs. Annin now holds the mortgages for $2000 and $35,000, respectively, above mentioned, given by Messrs. Camp and Jones respectively, on account of purchase money.

It appears also, that in 1870, the sheriff of Essex county sold, under execution, issued on judgments recovered against. Dr. Annin, his right, title, and interest in the Market street property to James N. Fitzgerald, and in 1872, sold to Staats O. Mead, under like execution, Dr. Annin's right, title, and interest in the part of the Camp street property which remained after the sale to Bruen H. Camp. These judgments were, two of them, recovered in the Circuit Court, and the other in the court of Common Pleas of Essex county, two of

them in 1870, and the other in 1871, and together amounted to about $740.

Dr. Annin continued to pay the interest on the notes held by the complainants, with more or less regularity, up to the time of the commencement of suit, and in 1867 paid $100 on the $600 note.

It appears that the complainant, Joseph W. Annin, had, from about 1870, frequently asked Dr. Annin for payment of the claims, but had been put off with promises, none of which were performed. Having, in 1871, been informed, by a letter from Mrs. Annin, that the property had been conveyed to her, the complainants brought suit upon the note held by them as administrators, and recovered judgment in the Supreme Court of this state, March 26th, 1872, against Dr. Annin, for $468.63, damages and costs; and on the same day, Joseph W. Annin, who also brought suit in that court upon his note, recovered judgment against Dr. Annin, for $623.16, damages and costs. Upon each of these judgments, a writ of *fieri facias de bonis et terris*, returnable to the term of June, 1872, was issued, and was returned by the sheriff of Essex county, wholly unsatisfied, for the want of property whereof to make the money, or any part of it.

On the 19th day of August, 1872, the complainants filed their bill in this court against Dr. Annin and his wife, to obtain satisfaction of their judgments out of the property conveyed by him to Mead, and by Mead and wife to Mrs. Annin, or the proceeds of the sales thereof remaining in the hands of the latter. The cause was argued on the pleadings and proofs.

*Messrs. Gaston* and *Bergen,* for complainants.

*Mr. Ransom,* for defendants.

THE CHANCELLOR.

The complainants sue as administrators, upon a claim held by them as such, and one of them sues, also, in respect of a claim due to him in his own right.

On the hearing, it was objected that the bill is multifarious, because it unites different causes of action in favor of different persons, viz., the claim in favor of the administrators, and that in favor of Joseph W. Annin in his own right; and therefore it was insisted it should be dismissed. This objection, if it were valid at all (on this point see *Story's Eq. Pl.,* § 286, and cases cited in note,) cannot avail the defendants now. They should have taken advantage of it by plea, demurrer, or answer, expressly for that purpose. By answering the matter of the bill they have waived the objection, and cannot now have any advantage from it. *Veghte* v. *Raritan Water Power Co.,* 4. *C. E. Green* 144; *Green* v. *Richards,* 8 *C. E. Green* 32. The court, if it found itself embarrassed by misjoinder or multifariousness to such an extent as to prevent it from administering appropriate relief, would dismiss the bill. *Brinkerhoff* v. *Brown,* 6 *Johns. Ch.* 139. Such embarrassment, however, will not exist in this case.

The further objection that this is a creditor's bill, and therefore ought to have been exhibited for the benefit of all the creditors of Dr. Annin, and not for the benefit of the complainants alone, may be briefly disposed of. It is completely established, that so far as respects property on which no creditor has obtained a lien by his judgment or execution at law, a creditor whose remedy at law has been exhausted, may file a bill in this court for his own benefit, and without making other creditors, standing in the same situation, parties.

The remaining objection is based on the alleged incongruousness and inaptness of the special prayers for relief. It is enough to say on this point, that if the special prayers were such that no relief could be granted under them, the court, under the prayer for general relief, may grant any appropriate relief consistent with the case made by the bill.

The conveyances by which the transfer to Mrs. Annin was made, were voluntary. It is indeed alleged in the answer, that part of the consideration was expenditures of her own money in paying principal and interest on the mortgages on the properties, and in repairing and improving the buildings

thereon, and her expenditures of her own money in the support of the family, but for aught that appears the expenditures referred to were voluntarily made, and not upon any agreement whatever as to reimbursement or security. She does not even claim that the money was loaned to her husband. How much it was is not stated, nor are we informed, except in the most general way, in what it was expended.

In the answer, they say that she received from her father's estate about $10,000, a considerable part of which she expended in paying principal and interest on the mortgages on the properties, and in repairing and improving the buildings thereon. She was not sworn as a witness in the cause. Her husband was. On this point, he testified that his wife had an income of her own, from her separate property from her father's estate, and that she expended "some of her money upon the property before it was transferred to her; that he did not know the amount; and that she paid it by paying taxes, interest on mortgages, and reducing mortgages." The presumption is, that whatever she thus paid was, as was her contribution to the support of the family, a voluntary contribution, a gift to her husband.

It is to be observed, that it is not even claimed that these moneys were paid through any necessity for saving or keeping up the property, which otherwise must have been lost, or have suffered injury or depreciation; for the allegation of the defendants is that, at the time of the transfer, the husband was not only not in any pecuniary strait, but, on the other hand, they claim that he was not only able to pay all his debts, but was worth, over and above all his liabilities, at least $8000, besides his real estate, and that, except current grocery and meat bills, which were promptly paid, he owed no debts, except those of the complainants.

It is not pretended that the conveyance to his wife was intended to secure her for advances made out of her separate estate. On the other hand, the defendants allege that Dr. Annin's purpose in making the conveyance, was to vest the title to the property in his wife for her own maintenance and

support, and the maintenance and support of the family, and because he had a perfect right to do so, as he was possessed of other property, more than sufficient to pay all his debts. She further says, in the answer, that, at the time of the conveyance, she supposed that he was entirely free from debt, and that, at that time, and for seven years afterwards, her husband neither had, nor apprehended any financial difficulties.

On the hearing, the effort to sustain the conveyance was made on the ground that the husband had a right to make a voluntary conveyance of the property to his wife, because, although he was not, in fact, free from debt, he, nevertheless, reserved to himself sufficient property to answer all his liabilities.

But, is it true that he retained property enough to pay his debts? In his testimony, he states that, at the time of the conveyance, he had a good practice, horses, carriages, sleighs, and everything to carry on a good business, with a large stock of medicines; that he had one, and sometimes two horses, and always two carriages, and that he had household property, also. He states that the whole value of all his personal property—household goods, horses, and everything that he had in 1861 and 1862, amounted to $3000 or $4000. He makes a statement of his whole gross income from his business, for each year, from 1861 to 1869, both inclusive, and sums it up at $52,257.12, the loss on which, in collection, was, he says, twenty-five per cent. It averages $4558.82 a year. He says it cost him to live, during that period, including the expenses of his business, $6000 a year. In no year, during that period, did his income, therefore, equal his expenses. He says there was, at the time of the conveyance to his wife, standing on his books, due to him, about $10,000, of which about seventy-five per cent. was collected; and that the amount on his books which he considered collectible, together with his personal property, made him worth about $11,000 or $12,000, and that his indebtedness, at that time, did not exceed $2500 or $3000. It appears, then, that, at the time of the conveyance to his wife, he had,

besides his real estate, only his book debts and furniture, &c., which latter he estimated as then worth $3000 or $4000. From that time, till he ceased business, his expenses exceeded his income by about $1500 a year. Although, he says, there must, at this time, be still standing on his books, a little over $11,000, in his answer, he says these debts, and the notes he holds, are of no value, and that he has no property except his wearing apparel.

From this exhibit of his affairs, it is difficult to see how he can be said to have reserved sufficient means to pay his debts, when he transferred to his wife all his real estate. His income was not equal to his expenses. His household furniture, horses, &c., were depreciating by use. The rest of his property was book debts, the character of which is exhibited by the fact that, when he ceased business, they amounted to about the same as they were when he conveyed away his real estate, and that they are worthless.

The greater part of the property transferred to his wife, has since been sold. The Market street property brought $50,000, and half of the Camp street property brought $4500. If the other half is worth, as he says, from $6500 to $7000, the property, at its present valuation, would be worth about $63,000. Giving credit for the rise in value since then, according to his opinion, it was, at the time of the conveyance to his wife, worth about $31,500.

The defendants' counsel has cited numerous cases in support of his proposition, that, provided Dr. Annin was solvent at the time of this voluntary conveyance, he had a right to make it, and it is good, and will be sustained even against creditors, whose debts then existed. The cases in which it has been so held, are cases which have arisen under a modification of the doctrine adopted by this court on the subject, and are cases where the *bona fides* of the transaction was not doubtful, and where ample provision was made, or remained for the payment of all the existing debts of the grantor.

But, tried by the rules governing those cases, this conveyance cannot prevail against the complainants. Here was no

ample provision, by reservation of property, or otherwise, for the payment of the grantor's existing debts. He transferred to his wife all his real property, reserving only his book debts and perishable goods; the latter, according to his statement, of the value of $3000 or $4000, at that time. Such a provision would not be sufficient to induce the court to sustain the voluntary conveyance, even if the transaction were sustainable in every other respect.

In *French* v. *French*, 6 *DeG. M. & G.* 100, the court said, speaking on the subject of such conveyances : " A person may, although indebted at the time, withdraw some portion of his property, provided there remains enough for the satisfaction of his creditors ; but it is an act which *prima facie* . must be made out. It would be absurd to suppose, that a person worth £10,000, and settling £1000, such settlement could be impeached ; but, if having £10,000, and, owing that amount, he settles £5000, it would be clearly a fraud ; and that state of things is not altered by the debtor having a reversionary interest, which, of course, is equally susceptible of value ; nor is the transaction affected by the circumstance of his having property abroad, or debts due him. If the effect is to withdraw any portion of the property, so that there does not remain sufficient to enable creditors to pay themselves, that is within the statute." In *Bullett* v. *Worthington*, 3 *Md. Ch.* 99, and in *Warner* v. *Dove*, 33 *Md.* 579, it was held that, if a party possessed of real estate, and also of other assets, consisting of choses in action, gives away the former, and leaves his creditors to resort to the latter, where their remedy may be precarious and difficult, and the property, at all events, less readily and conveniently accessible, the conveyance, of necessity, operates to hinder and delay creditors in the collection of their debts. And in *Thompson* v. *Webster*, 7 *Jur. N. S.* 531, it was said, by Lord Cranworth, that, when the property is not conveniently accessible to creditors, the conveyance is liable to be set aside, although the owner, at the time of the gift, is not only not insolvent, but may have enough property left, in some form or another,

to satisfy all his debts. See, also, *Parrish* v. *Murphree*, 13 *Howard* 97.

It is true, it is said in the present case, that the complainants might, at any time between the date of the transfer and the year 1869, have had their money for the asking, and it is argued that, inasmuch as they did not see fit to demand or ask for their money until after the debtor became embarrassed in his circumstances, and unable to pay, they must submit to the loss of their money. But, Joseph W. Annin swears that, though he called at the defendants' house once in every three or four months, he never knew, nor heard anything said about the conveyance, until he received the letter from Mrs. Annin, dated December 2d, 1871, mentioning the fact. In the meantime, however, the interest was paid on the complainants' claims, and on one of them a payment of $100 on the principal.

If Dr. Annin was, as he insists, abundantly able to pay all his debts, after conveying away all his real estate, why did he not pay the complainants? Why carry these debts through so many years, on interest? The omission of the complainants to press for payment of their claims, and their delay in pursuing their remedy is urged against them; but there is no ground for holding that the pursuit of the property of their debtor, by these proceedings, ought to be stayed, impeded, or affected by the imputation of negligence. They do not appear to have delayed taking proceedings, after they were apprised of the conveyances complained of.

The answer alleges, as ground of estoppel, that Mrs. Annin has, in good faith, spent large sums of her own money in paying off mortgages on the properties, and in improving them, and has sold the greater part of those properties. In my judgment, Mrs. Annin is not in a position to invoke the aid of the doctrine of estoppel against these complainants. In the first place, it does not appear that either she or her husband, notwithstanding the intimate relations of the parties, ever, until her letter of December, 1871, informed the complainants of the transfer, and it does appear that the

complainants did not know of it till that time.   In the next
place, admitting that they are chargeable with notice from
the record of the deeds, her general allegations on the subject
of her expenditures of her own money, could not be satisfac-
tory on this head, without some knowledge as to what, on
the other hand, she had received from the property.   She
may have expended her own money on the property, and
may have received from the property more than she spent.

Mere delay in prosecuting his claim for his debt against
the voluntary grantee, is no ground of equitable estoppel
against the creditor, whose debt existed at the time of making
the voluntary conveyance, in seeking to reach the property
in the hands of such grantee.

But the doctrine of this court on the subject of voluntary
conveyances, with regard to antecedent creditors, is decisive
in favor of the complainants' claim.   If the party is in-
debted at the time of the voluntary settlement, it is pre-
sumed to be fraudulent in respect to such debts, and no
circumstance will permit those debts to be affected by the
settlement, or repel the legal presumption of fraud.   *Cook* v.
*Johnson*, 1 *Beas.* 52 ; *Beeckman* v. *Montgomery*, 1 *McCarter*
111 ; *Belford* v. *Crane*, 1 *C. E. Green* 271.   See, also, in
this connection, *Spirett* v. *Willows*, 3 *D. J. & S.* 293, 302 ;
*Jenkyn* v. *Vaughan*, 3 *Drew.* 419 ; *Townsend* v. *Westacott*,
2 *Beav.* 340 ; *Freeman* v. *Pope*, *L. R.* 9 *Eq.* 206.

The conveyance, in this case, appears to me, for the reasons
heretofore given, to have been wholly voluntary.   It was a
voluntary gift by the husband for the benefit of himself and
his family.   It has no claim to be regarded as a post nuptial
settlement.   *Reade* v. *Livingston*, 3 *Johns. Ch.* 493 ; *Belford*
v. *Crane, supra.*

From the time of making the transfer, the husband has
been in the enjoyment of the property, or the proceeds of it.
He says his family is supported on the interest of the $35,-
000 mortgage.   He speaks of the part of the Camp street
property, which is unsold, as his own at this time.   He says :
" The house I still own, in Camp street, and suppose it is

worth from $6500 to $7000, and is not mortgaged.  I think the title to the Camp street property is now in Staats O. Mead." Notwithstanding the sheriff's sale to Mead, he still claims to own the property.  I cannot perceive on what principle of ethics a man ought to be permitted, by merely shifting the legal title of his property from himself to his wife, to enjoy it, in defiance of the just demands of those creditors whose undoubted right it was to look to it for the payment of their existing debts.

It is not necessary to impute to the conduct of the defendants in this case any moral turpitude.  It has been said that the law stamps a man's generosity with the name of fraud, when it prevents him from acting fairly towards his creditors, and presumes fraud if he disables himself from paying his debts.  The principle is, that persons must be just before they are generous, and that debts must be paid before gifts are made.  *Partridge* v. *Gopp*, 1 *Eden* 163.

The complainants are entitled to be paid out of the property transferred to the wife, or the proceeds of it.  The sale by the sheriff to Staats O. Mead, of the Camp street house and lot, passed no title, and is no obstacle to the relief to which the complainants are entitled.  *Belford* v. *Crane*, *supra*.